## ERQUIT *v.* NEW YORK & CUBA MAIL S. S. Co.

*(District Court, S. D. New York.   April 18, 1892.)*

SHIPPING—NEGLIGENCE—IMPROPER HATCH COVER—PERSONAL INJURIES.

Owing to the warping of their supports in hot weather, the hatch covers of a ship did not fit tightly over the hatch, which fact was unknown to libelant, who had recently shipped as sailor on such ship. In consequence of such defect, as libelant was, under orders. covering the hatch, one of the covers fell, precipitating libelant into the hold. *Held*, that the ship was liable for his injuries.

In Admiralty.   Libel for personal injuries.
*Alexander & Ash*, for libelant.
*Charles C. Nadel* and *Mr. Moore*, for respondent.

BROWN, District Judge.   On the 28th of September, 1891, about 5 o'clock P. M., as the libelant, who was an able seaman on the steamship City of Washington, at Tampico, was putting on the hatch covers for the night upon the main deck, with three other seamen, under the direction of the boatswain, he fell through the hatch into the lower hold and sustained some injuries, for which the above libel was filed.

The hatch was covered by means of 9 covers, 3 rows, of 3 covers each.   Two strong-backs, consisting of beams 15 feet long by 6 inches wide and 12 inches deep, ran lengthwise of the ship to serve as the interior supports of the hatch covers.   The 3 covers on the port side were first put in place, then the 2 forward covers in the middle row. To sustain these covers a ledge, or rest, was cut in the strong-backs about an inch and a half wide, upon which the covers were designed to rest.   The libelant had stepped upon the middle cover of the second row, and had taken hold of the ring of the aft cover to put it in place in that row, when the port side of the middle cover fell in underneath the libelant, and the cover went down with him into the hold, while the other cover followed on top of him.   The libelant claims that the middle cover on which he was standing was apparently put in the proper place; but that the port beam, or strong-back, had been warped and bowed to port in the middle, so that the port edge of the central cover did not get proper support and fell in under his weight.

The respondents contend that the accident could not have happened in that way.   They gave evidence tending to show that there could not possibly have been less than half an inch of support for the cover upon the port ledge, if the cover was down in its proper place, even if the cover was shoved over to starboard to the utmost limit possible. They also gave evidence tending to show that the starboard beam or strong-back was warped or bowed to port, to the same extent as the port strong-back, so as not to increase the space between those two beams. They contend, therefore, that the cause of the accident was that the middle cover was not put down in place.   Other evidence shows, however, that the spaces for the covers were affected considerably by wet or dry weather.   Not infrequently when wet, the covers on the port

side of the hatch had to be beaten down, because they fitted so tightly. Several witnesses besides the libelant have testified that the middle covers were carefully put down in their proper places before the libelant stepped upon them. Some unfilled space was noticed along the port edges, but no opening beneath.

I see nothing to warrant the rejection of the explicit testimony of these witnesses that the covers were in place. A considerable time elapsed between the accident and the time when the careful measurements were taken by the witness Weeks, above referred to. The accident happened in Mexico, in a hot climate, at the end of the summer season, when the covers and the beams would have been subjected seemingly to the utmost possible influence of long-continued dry weather, such as would shrink the covers to the utmost; while any shrinkage of the beams, if there was any, would also enlarge the hatch openings. The measurements testified to were made here in midwinter, and under opposite conditions. I must accept the facts, therefore, as sworn to in this particular by the libelant's witnesses.

The libelant was without fault. He was new to the ship; he was not acquainted with the imperfect fitting of the hatch covers; and he was putting them on for the first time, under the direction of the boatswain, who hurried him in his work. The libelant is, therefore, entitled to recover his actual damages.

He was confined to his bunk for four days. After that he came upon the deck more or less, but was unable to work. On arrival in New York he went to the Marine Hospital, where he remained 39 days, and was then discharged. His own physician testifies that he finds evidence of a thickening of the pleura, which the respondent's expert testifies could only proceed from acute pleurisy. If he suffered any such acute attack, it must have been very short. All are of the opinion that, after a few months more, the libelant will be practically well; though a difference remains as to the thickening of the pleura, and its necessary consequences. Looking at all the circumstances, I think $750 will be a reasonable allowance for his injuries; for which a decree may be entered, with costs.