SULLIVAN v. NITRATE PRODUCERS' S. S. CO., Limited.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 42.

1. JUDGMENT ⬥812(2)—DECREE IN REM BAR TO SUIT IN PERSONAM.

A decree in rem may be successfully used under the plea of res judicata, in an action in personam on the same cause of action.

2. ADMIRALTY ⬥95—ADJUDICATION IN ACTION IN REM FOR INJURY TO SEAMAN BAR TO SUIT IN PERSONAM.

In a suit in rem by a seaman to recover indemnity for injury on board, a decree of dismissal because libelant was on an English ship on the high seas when injured, and under English law indemnity was not recoverable, *held* a bar to a second suit in personam for maintenance and cure, which, although given by British statute, might have been recovered in the prior suit.

3. ADMIRALTY ⬥30—SINGLE CAUSE STATED IN SUIT FOR INJURY IN SERVICE.

A libel by a seaman injured in the service to recover the expense of maintenance and cure, and also for negligence in failing to provide proper medical care and attention, *held* to state but a single cause of action.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by John Sullivan against the Nitrate Producers' Steamship Company, Limited. Decree for respondent, and libelant appeals. Affirmed.

For opinion below, see 254 Fed. 361.

This suit is in personam against the owner of the British steamship Anglo-Patagonian. Before this litigation, Sullivan sued the steamship in rem (in another district), setting forth in his libel that he had "joined" the vessel "as a horse handler in the employ of the Federal Export Corporation," and as such was on board her on a voyage from Philadelphia to Bordeaux. He was injured, as he alleged, "solely through the fault and negligence of the boatswain and a member of the crew of said vessel"; he being (as was also alleged) not a member of the steamship's crew.

Damage was asserted in $5,000, and after the usual allegations of jurisdiction and prayers for process, the libel in rem concludes: "That this honorable court may be pleased to decree the payment of your libelant's claim in the sum of five thousand ($5,000.00) dollars, and that said vessel may be condemned and sold to pay the same, and, in the event that he should *fail to prove said vessel was unseaworthy for the reasons aforesaid*, that he be awarded the expense of his maintenance and cure and wages to the end of the voyage for which he signed, and such other and further relief as to the court may seem just and proper."

The answer to this libel in rem denied that Sullivan was employed by the Federal Export Company, and admitted that he received injury while on board as a member of the ship's crew and after signing articles as such. It further asserted that the accident happened on a British vessel and on the high seas, and pleaded the Merchant Shipping Acts and Workmen's Compensation Act of Great Britain.

Trial was had under these pleadings, and libelant adjudged to have been a member of the crew, with the status of a seaman. The court further held that, if he did receive injury as and when he asserted, the occurrence was on a British vessel, on the high seas, and by reason of the negligence of a fellow servant. As a conclusion of (British) law, therefore, it followed that Sullivan could not maintain any action for damages through negligence, and was remitted to the British Workmen's Compensation Act for relief. Final decree was entered accordingly, which still stands unmodified; all periods for appeal having expired. Thereupon the present suit was begun, in which libelant alleges that he was a member of the Anglo-Patagonian's crew, that he suffered the same injuries as before complained of, and was neglected by the steamship's officers; so that, beside the normal results of such a hurt as he received, "he suffered additional and excruciating pain [and] * * * it became necessary to remove a portion of two of his fingers," which could have been saved with "proper medical care and attention." Wherefore he demanded (as one cause of action) "maintenance and cure," estimated at $1,000, and (as a second cause of action) damages of $3,000 for the neglect of his wound.

The respondents pleaded to the merits, but set up in addition the record of the first suit, after inspection of which the court below dismissed the libel.

Silas B. Axtell, of New York City (Arthur Lavenburg, of New York City, of counsel), for appellant.

Kirlin, Woolsey & Hickox, of New York City (L. De Grove Potter, of White Plains, N. Y., of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It was correctly assumed in the court below that a decree in rem may be successfully used under the plea of res adjudicata in an action in personam. Bailey v. Sundberg, 49 Fed. 583, 1 C. C. A. 387.

[2] We then consider (1) the scope and nature of Sullivan's earlier suit, and (2) what was decided or might have been decided in that action, remembering that it is an inexorable rule of law that a judgment is a bar to subsequent demands which either were or might have been litigated in the action productive of the judgment. Watts v. Weston, 238 Fed. 149, 151 C. C. A. 225, and cases cited.

Libelant's pleading in rem is now said to contain obvious mistakes, amounting to something like "clerical error." The fact is, however, that it is drawn in a common form, and is reasonably appropriate when and if the vessel sued is American, and the law applicable that of the United States.

By denying that libelant was a member of the Anglo-Patagonian's crew, it was plainly expected to avoid The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; but if Sullivan was proved to be (in contemplation of law) a seaman, then he evidently expected to avail himself of The Bouker No. 2, 241 Fed. 831, 154 C. C. A. 533. Such pleading was sufficient for this purpose, in the admiralty at all events, under The Gazelle, 128 U. S. 487, 9 Sup. Ct. 139, 32 L. Ed. 496, and the prayer for general relief as construed in Sonsmith v. The J. P. Donaldson (C. C.) 21 Fed. 671.

But it turned out on the evidence that to this injury, received on the high seas by a member of the crew and on a British vessel, British law alone was applicable (The Eagle Point, 142 Fed. 453, 73 C. C. A. 569), and under that law libelant has no right to an indemnity, though for reasons quite different from those authoritatively stated for us in The Osceola, supra. Further, such libelant had no right to maintenance and cure (Organ v. Brodie, 10 Ex. 449), except by virtue of the British Merchant Shipping Act, which as last enacted in 1906 contains in section 34 a statutory direction equivalent to or identical with the doctrine of The Osceola, supra, on this point.

It follows that the earlier suit settled once and for all libelant's status, viz. that he must recover under British law or not at all. If, however, he had any right to recover anything under that law, we think he was entitled in the United States to the remedies of admiralty; wherefore his suit was well brought.

[3] In the present case Sullivan is suing (1) for the reasonable expense of the maintenance and cure that should have been granted him; and (2) for the negligence of the steamship in failing to provide for him "proper medical care and attention"—and these two items or kinds of damage are labeled separate causes of action.

Exact definition of the phrase "cause of action" is elusive. It has been said that the "cause of action in a suit is the act or thing done or omitted to be done." Metropolitan, etc., Co. v. People, 106 Ill. App. 516, affirmed 209 Ill. 42, 70 N. E. 643. Long before Codes rendered the phrase a commonplace, it was held that, even where actions were promoted under different writs the cause of action was the same where the same evidence would support a recovery. Rice v. King, 7 Johns. (N. Y.) 20; Johnson v. Smith, 8 Johns. (N. Y.) 383. An ambitious attempt at definition is found in Secor v. Sturgis, 16 N. Y. at page 558, that:

"The true distinction between * * * rights of action which are single and entire and those which are several and distinct is that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts."

Of this we incline to think that the criticism made in Oregon, etc., Co. v. Oregon Railway Co., 28 Fed. at page 511, is well founded, viz. that the test suggested has "not been found satisfactory, and each case must be decided largely on its own circumstances"; and as much was admitted by Earl, J., in Veeder v. Baker, 83 N. Y. 160.

But though complete and definitive statement is, we think, impossible, the above descriptions or tests require us to hold that this libelant

not only might have asked, but did ask, for everything that he now seeks to recover in the suit first brought by him.

In The City of Alexandria (D. C.) 17 Fed. 395, it is said that neglect of a seaman after he had been wounded in the service of the ship "becomes a different and additional cause of action against the ship," and this may be quoted as authority holding that Sullivan's second cause of action is something never before advanced by him against the Anglo-Patagonian or its owner.

We doubt whether the dictum was intended to go so far; but, if it was, the authorities cited yield no such doctrine. We hold the question whether so-called causes of action are in truth singular or plural is one largely dependent on the facts of each case, and further hold that in this instance Sullivan has shown no cause of action different from, additional to, or independent of his demand for maintenance and cure.

The reason for this is that, as pleaded, the only ground of complaint that he has is that maintenance and cure were denied him, and the absence of such cure or attempted cure is the one and only thing that constitutes the neglect alleged as a second cause of action. It is conceivable that a shipmaster or an ignorant or unqualified ship's doctor might, while affording maintenance, be negligent in cure; but no such case is pleaded or suggested. The same act—i. e., refusal of maintenance and cure—cannot give rise to two causes of action. The attempt is an endeavor to arrive at the same result by different media concludendi, or grounds for asserting the right. This was condemned in United States v. California, etc., Co., 192 U. S. 355, 24 Sup. Ct. 266, 48 L. Ed. 476.

It may be added that, even if the present libel did set forth a different and hitherto unadvanced cause of action, the same is measurable by the British law only, and for such a suit no authority is shown to exist. Whatever right libelant has must depend on the statutes of Great Britain, as to which he was definitely concluded in the earlier action.

Decree affirmed, with costs.