## THE PETROLINE.

(Circuit Court of Appeals, Second Circuit. February 9, 1921.)

No. 159.

Seamen ⊂⊃29(5)—Injury not shown to have been due to unseaworthiness of ship.

Evidence *held* insufficient to show that injury to a seaman by the falling of a hatch cover on his hand was due to unseaworthiness of the ship, in that the stick or block furnished for use to hold up the cover when raised for ventilation was worn and defective.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Soicho Sco against the steamship Petroline; the Saxoleine Steamship Company, Limited, claimant. Decree for claimant, and libelant appeals. Affirmed.

Silas B. Axtell and Arthur Lavenburg, both of New York City, for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. De Grove Potter and Harry D. Thirkield, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH and MANTON, Circuit Judges.

MANTON, Circuit Judge. In his libel filed, the appellant seeks to recover $5,000 damages for personal injuries. In the first cause of action, he claims indemnity because of the unseaworthiness of the vessel, and asks $2,500; in the second cause of action he seeks $2,500 damages for the failure of the ship to furnish proper medical attention. Upon the trial, the second cause of action was withdrawn in open court.

Recovery is sought against the steamship in rem and against the Saxoleine Steamship Company, Limited, in personam. The steamship company has not appeared. The claimant has filed an appearance in the in rem suit, and a stipulation of value was approved and filed in the sum of $3,000. The answer filed denies the allegations of the libel and the claimant affirmatively defends upon the ground that the injury occurred on a British ship on the high seas, and that the law of Great Britain and Ireland is the controlling law, and that no maritime lien exists, and therefore this suit in rem must fail. The unseaworthiness of the vessel is claimed in the libel because of the fact that a hatch cover was not provided with proper supports or braces. It is claimed that, in opening the hatch cover so as to afford air to the hold below, it was necessary to use a piece of wood or stick which was inadequate, ineffective, and wholly unsuitable for the purpose for which it was being used.

It appears that the libelant is a subject of Japan, and on the 6th of October, 1917, signed shipping articles from the port of New York as an able-bodied seaman on the steamship Petroline for a voyage to the United Kingdom and return to the United States. On the 20th of December, 1917, while on the high seas and on the return voyage to the United States, libelant was assisting in opening hatch No. 5 on the port side of the vessel, when the hatch cover came down on his right hand, crushing several of the fingers of his hand. It is the claim of the libelant that a piece of wood or stick was used to hold up the hatch cover, and that it was worn and defective, and therefore inadequate and unfit for the purpose for which it was being used.

Libelant's story of the accident is as follows:

"Q. Did you see it, or did you not see it? A. I didn't see the wood drop; but I suppose it must drop, because when I lifting off the hand I didn't see the wood dropping.

"Q. Did you see the wood outside on the deck anywhere?

"The Court: This same piece of wood.

"Q. After the accident I mean? A. I didn't see it outside, but I found the wood was inside of the tank.

"Q. Did you see it, pick it up in your hands, and examine it? A. No; I didn't see it.

"Q. At any time? A. I could not wait—

"Q. Either before or after the accident? A. Then I went to bed; I could not see.

"Q. Had you seen this piece of wood before the accident happened? A. When I was ordered by the chief mate to come down to help that lifting up the cover, I kept my attention to lifting up the cover, and I did not pay much attention to the wood, that depending on the chief mate. * * *

"Q. Hadn't you seen these sticks lying on deck, or on the top of the tank, before this? A. I did not know where this particular wood was there; but I saw some other woods on the bridge, under the bridge deck. * * *

"A. The chief mate order us to lift up the cover, so that I didn't pay any particular attention to that particular wood.

"Q. And you didn't see how the accident happened; you said that in your direct examination; is that correct? A. My whole attention was to lifting up the cover, and I was told you before I didn't pay any attention to that wood."

The libelant called another witness, Inouye, a former fireman on the steamship; but he did not see the alleged defective block of wood, although he did say he saw a block of wood on deck. Its application to the function of holding up the lid was not disclosed. Another witness, Miyosihe gave testimony to seeing blocks of wood which were worn. He did not see this block of wood used upon No. 5 hatch for two or three days before the accident to libelant. Another witness, Kitano, while not seeing the occurrence, gave testimony that there was a block in use at the time which was defective. He testified as follows:

"Q. You said one end was broken off; which end do you mean? A. They used any block that was found nearby conveniently.

"Q. They don't use any special block to No. 5 hatch? A. No. * * *

"Q. Did you ever see this block that they used at No. 5 hatch at the time of his injury, again after that time you examined it, an hour after the accident? A. Used it a good many times after that. * * *

"Q. You say you saw this block of wood that was used at No. 5 hatch to hold the hatch cover up, after this man was hurt? A. I saw a good many blocks, but I cannot tell which they used at No. 5."

If there was a block or blocks of wood which were used for holding up the lid of the hold in question, there was no proof showing any connection by use of the blocks of wood with the accident to the libelant. It is not shown that a defective block was used which brought about the happening of the accident. This result follows after a consideration of all the testimony offered on behalf of the libelant. The chief officer of the vessel testified that he was present when the libelant was assisting in lifting the cover of the hatch, and described the occurrence as follows:

"Yes; I was present. We were lifting the tank tops; these other three men and I was putting in the tongs. I lifted three on one side of the deck, passed over to the port side of the deck, lifted one there, then came to the second one on that side, which is the fifth on that deck, placed the tong on the tank top to lift, when the men passed ahead of me; but this man was standing back of me when I called to him to come along. He was touching or taking out the tong, thinking it was not properly fixed as it ought to be; but he had no right to touch it, unless we were there every man, and then take

hold of it and see if it was properly secured. It was not very heavy, but too heavy for any single man or two men to handle. * * *

"Not if he hadn't interfered with the main tong. We had lifted back on that deck four tank tops before we got to this one; when they lifted the tank top, I shifted the tong in, the same as I did the others, and the men let the tank top go down to the tong; then we walked towards the sixth tank top, to lift that, and this man stayed behind. I turned around to tell him to come along; he was looking at the tong and touching it, as if he saw it was not properly in place. As soon as he touched it with his hand it fell upon him. He had no right to go near it when it was put in."

It also appears that, if there was a worn, defective block, there were others available for use, and the master, therefore, did not provide a ship which was unseaworthy. Hanrahan v. Pacific Transport Co. (C. C. A.) 262 Fed. 951.

In view of our conclusion that libelant has failed to prove a cause of action upon which he rested, it becomes unnecessary for us to discuss the question of law presented on the briefs of the appellant and appellee as to whether or not the British law governs, since the ship was a British-owned vessel, and the fact that the occurrence was on the high seas. The subject of rights or liabilities arising from fault and neglect, and the law applicable thereto, together with the rights of members of the crew of a ship, are fully discussed in The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152; The Scotland, 105 U. S. 24, 26 L. Ed. 1001; The Wildenhus, 120 U. S. 1, 7 Sup. Ct. 385, 30 L. Ed. 565; Patterson v. Bark Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002; Sullivan v. Nitrate Producers S. S. Co. (C. C. A.) 262 Fed. 371; The Eagle Point, 142 Fed. 453, 73 C. C. A. 569.

As to the rule in the British courts see Smith v. Brown (1871) L. R. 6 Q. B. 729, and The Vera Cruez, 10 App. Cases, 59.

The court below correctly found the facts against the libelant, and with these conclusions we agree.

Decree affirmed.