THE IMPERATOR.

(Circuit Court of Appeals, Fifth Circuit. April 3, 1923.)

No. 4005.

1. **Maritime liens** ⟨⟩1—**May exist independently of statute.**

It is not essential to the existence of an admiralty lien that it be created by statute.

2. **Seamen** ⟨⟩29(1)—**Seaman has lien for indemnity for injury through unseaworthiness of vessel.**

Both by English and American law a maritime lien exists in favor of a seaman for indemnity for an injury suffered through unseaworthiness of the vessel.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by Andreas Jensen against the steamship Imperator. Decree for respondent, and libelant appeals. Reversed.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for appellant.

Geo. H. Terriberry, W. W. Young, Frazer L. Rice, Jos. M. Rault, and Walter Carroll, all of New Orleans, La., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal from a decree in admiralty dismissing appellant's libel upon exceptions. The appellant was a seaman on the steamship Imperator, and alleges that, while that vessel was entering the harbor of Belize, British Honduras, he was injured while engaged in the performance of his duty by the breaking of a rope in the rigging; that the rope was unsafe, and that the ship was therefore unseaworthy.

The libel, after alleging that the admiralty law of England is in force in British Honduras, pleads sections 7 and 35 of the English Admiralty Act of 1861, which provides:

"Sec. 7. The High Courts of Admiralty shall have jurisdiction over any claim for damages done by any ship."

"Sec. 35. The jurisdiction conferred by this act in the High Court of Admiralty may be exercised either by proceedings in rem or by proceedings in personam."

And section 5 of the Merchants' Shipping Act of England of 1876, which provides:

"In every contract of services, expressed or implied, between the owner of a ship and the master, or any seaman thereof, and in every instrument of apprenticeship on board any ship, there shall be implied, notwithstand-

ing any agreement to the contrary, an obligation on the owner of the ship that the owner of the ship and the master and every agent charged with the loading of the ship or the preparing thereof for sea or the sending thereof to sea, shall use all reasonable means to insure the seaworthiness of the ship for the voyage at the time when the voyage commences and to keep her in a seaworthy condition for the voyage during the same: Provided that nothing in this Section shall subject the owner of a ship to any liability by reason of the ship being sent to sea in an unseaworthy state where, owing to special circumstances, the so sending thereof to sea, is reasonable and justifiable."

The District Court held that no lien on the vessel was created by the acts above quoted.

[1, 2] It is contended in behalf of the appellant that a lien is created by the act of 1861 upon the ground that the damage was done by the ship. But the Supreme Court, in reviewing this language, which is also found in a Wisconsin statute, held otherwise in The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760. However, it is not essential to the existence of an admiralty lien that it be created by statute. In The Corsair, 145 U. S. 335 and 347, 12 Sup. Ct. 949, 952 (36 L. Ed. 727), it is said:

"In much the larger class of cases, the lien is given by the general admiralty law."

In The Bold Buccleugh, 7 Moore, P. C. 267, a leading English case, arising out of a tort, it was held that a maritime lien exists in cases where a proceeding in rem is the proper course. In The Osceola, supra, after reviewing the English and American authorities, it is held:

"That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship or a failure to supply and keep in order the proper appliances appurtenant to the ship.".

The foregoing is one of the four propositions laid down in that case upon which the Supreme Court considered the law settled. The opinion proceeds:

"It will be observed in these cases that a departure has been made from the Continental Codes in allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness. This departure originated in England in the Merchants' Shipping Act of 1876, above quoted (Couch v. Steel, 3 El. & Bl. 402; Hedley v. Pinkney & Co., 7 Asp. M. L. C. 135, [1894] App. Cas. 222), and in this country, in a general consensus of opinion among the Circuit and District Courts, that an exception should be made from the general principle before obtaining, in favor of seamen suffering injury through the unseaworthiness of the vessel. We are not disposed to disturb so wholesome a doctrine by any contrary decision of our own."

We are of opinion that this case is ruled by the case of The Osceola, and that consequently the decree of the District Court should be, and it is, reversed.