## THE ORISKANY.
### No. 1914.

District Court, D. Maryland.
June 20, 1933.

George W. P. Whip and Huntington Cairns, both of Baltimore, Md., for libelant.

George Forbes and Henry L. Wortche, both of Baltimore, Md., for respondent.

WILLIAM C. COLEMAN, District Judge.

This is a libel in rem by an American seaman against the British steamship Oriskany for injury, and also for maintenance and cure in connection with this injury, which the seaman sustained on April 14, 1932, due to the alleged unseaworthiness of the Oriskany during a voyage from Kingston, Jamaica, to St. John, New Brunswick, Canada, with a cargo of bananas.

The material facts relating to the injury to libelant are found to be as follows: When a day or two out from Kingston, Jamaica, libelant and another seaman were ordered by the officer in charge to transfer certain wooden hatch covers from the orlop deck, where they had been piled, to the deck below and to stow them there. The primary use of these hatch covers was as a staging in loading and discharging the fruit cargo, they being shifted from deck to deck, as proper ventilation of the cargo or other conditions might require. While engaged on the lower deck in receiving these hatch boards as they were passed to him by the other seaman, libelant was struck on the head and knocked down into the hold by one of them which had fallen from the hands of the other seaman; a lurch of the vessel having caused him to drop it as he was endeavoring to pass it down to libelant. The sea and weather were moderate.

Besides denying that the Oriskany was in any respect unseaworthy, the respondent denies that this court has jurisdiction of the present suit, claiming that libelant's sole right of action is one in personam under the British statutes, in a British forum. Thus we must dispose of this jurisdictional question at the outset, and a correct answer to it necessitates at least a brief review of the British law, because, since we have here the case of an injury occurring on a British vessel while on the high seas, the existence and nature of a cause of action for such alleged wrong is governed by the law of the country under which the vessel is registered; that is, by the law of the flag. See Sullivan v. Nitrate Producers' S. S. Co. (C. C. A.) 262 F. 371; Id. (D. C.) 254 F. 361; The Lamington (D. C.) 87 F. 752; section 445 of the Restatement of the Law of Conflicts, proposed final draft No. 3. Compare La Bourgogne, 210 U. S. 95, 138, 28 S. Ct. 664, 52 L. Ed. 973; National Steam Navigation Co. v. Dyer, 105 U. S. 24, 29, 26 L. Ed. 1001;

Bonsalem v. Byron S. S. Co., Ltd. (C. C. A.) 50 F.(2d) 114. While the precise question now before us, namely, whether British admiralty law permits a suit in rem by a seaman against his ship for injuries sustained by reason of the ship's unseaworthiness, is rendered somewhat complicated by the existence of a number of statutory provisions hereinafter referred to, nevertheless the decisions would all seem to require a negative answer to this question. See Currie v. McKnight, [1897] A. C. 97; The Vera Cruz, [1884] Prob. Div. 96; The Theta, [1894] Prob. 280; Mulvey v. Barge Neosho, 47 D. L. R. 427. In each of these cases it was held that, unless the damage be caused *by* the vessel and not merely *on* the vessel, it was not such damage as would give to libelant a remedy in rem.

As early as 1854 in Couch v. Steel, 3 El. & Bl. 402, it had been decided that, in the absence of knowledge of unseaworthiness or of deceit or express warranty, a seaman had no remedy for personal injuries due to his ship's unseaworthiness; in other words, that there was no implied contract or warranty that the vessel was seaworthy. In 1861, however, the Admiralty Court Act (24 Vict. c. 10, § 7), extended the jurisdiction in admiralty, both in rem and in personam, to "any damage done by any ship." But it was uniformly held that this statutory change did not have the effect of according to seamen a right in rem for personal injuries due to his vessel's unseaworthiness, because such damage was not caused by the vessel herself. See Currie v. McKnight; The Vera Cruz; The Theta; and Mulvey v. Barge Neosho, supra; also The Osceola, 189 U. S. 158, 177, 23 S. Ct. 483, 47 L. Ed. 760. Then there followed, in 1876, another statute, the Merchants' Shipping Act (39 and 40 Vict. c. 80, §§ 4, 5), which, among other provisions, created against the shipowner and in favor of the seaman an implied warranty that the ship was seaworthy. See Hedly v. Pinkney & Sons, S. C. Co., L. R. 1894, A. C. 222. Next, the Merchant Shipping Act of 1894, 57 and 58 Vict. § 207, among other things, accorded to seamen injured while working aboard vessels a right to maintenance and cure. Later, in 1905, the Shipowners' Negligence Act, 5 Ed. 7, c. 10, § 1, gave to the injured seaman a right to detain a foreign ship while in British waters on account of injuries that he had sustained while working on such vessel in British waters. In 1906 the British Workmen's Compensation Acts, 6 Ed. 7, § 58 (present act is 15 and 16 Geo. 5, c. 84, § 35), were extended to include seamen, and the

only pertinent statutes since 1906 are apparently the Maritime Conventions Act of 1911, 1 and 2 George, 5, c. 57, § 5, and the Supreme Court of Judicature (Consolidation) Act 1925, 15, 16 George 5, c. 48, §§ 22 (2) and 33 (2). The first act defined damage as including personal injury, but did not modify the limitation of the action in the Act of 1861 to damage done by the vessel. See The Moliere, 1925 L. R., Prob. Div. 27. The second act is the latest parliamentary expression on this subject, but, since the wording of this act and that of the Maritime Conventions Act of 1911 is much the same, and since there appears to be no decision interpreting the Act of 1925 contrary to the decision in The Moliere, supra, rendered a year before the law's enactment, this last statute appears to have wrought no change in the prior law.

■■ To summarize, therefore, the British law which has been above briefly and chronologically analyzed, while a seaman is not without remedy when injured through his ship's unseaworthiness, he has an action in rem only if such injury occurs in British waters, upon a foreign ship; otherwise he must proceed in personam either under the Workmen's Compensation laws, or under the Merchant Shipping Act of 1876. Does this mean, however, that the British law attaches, in other cases, no lien to the vessel for the wrong done to the seaman? We consider that it does, but at the same time we believe that this is no bar to assertion of a right in rem in this jurisdiction. It is, of course, well settled that, if a lien attaches to a vessel by foreign law, under circumstances in which this court has admiralty jurisdiction, such lien is enforceable in this court. See Lewis v. Jones (C. C. A.) 27 F.(2d) 72, certiorari denied 278 U. S. 634, 49 S. Ct. 32, 73 L. Ed. 551. But the existence of such a lien is not necessarily a prerequisite to jurisdiction. In the Maggie Hammond, 9 Wall. 435, 19 L. Ed. 772, a libel was filed against a foreign ship in the admiralty court in Baltimore, libelant and claimant both being foreigners, the place of shipment and the place of consignment being foreign ports (the former a port of Wales, the latter a port of Canada), and the whole ground of the libel was a matter occurring abroad. Nevertheless, the Supreme Court held that jurisdiction existed and this regardless of whether or not under the British law or under the law of Scotland, where the contract of shipment was breached. In this case the court said, pages 451, 452 of 9 Wall.:

"Courts of justice, and text writers, everywhere concede that the ship, under the maritime law, is bound to the merchandise and the merchandise to the ship, independent of any local usage or statute; but it is true, as suggested by the appellants, that such a lien cannot be enforced in some countries, because the courts of admiralty, which alone are competent to give effect to the same by a proceeding in rem, are not, as now constituted, invested with any authority, except to a very limited extent, to exercise such a jurisdiction.

"Maritime liens are of little or no value, in a country where there are no appropriate tribunals for their enforcement, as they must remain dormant and unavailable, but the denial of such jurisdiction to her admiralty courts, by one country, whether it be by legislation or by the prohibitions of her common law courts, cannot have the effect to impair or diminish the jurisdiction in such cases of the admiralty courts of any other country, if they are legally clothed with the power and authority to enforce such remedies for the breach of a maritime contract.

"Such a remedy will not in general be accorded, in our courts of admiralty, to the citizens or subjects of a foreign country whose courts are not clothed with the power to give the same remedy in similar controversies to the citizens of the United States, but the question whether they will do so or not is not a question of jurisdiction in any case, as it is clear they may do so if they see fit, and in some cases they will take jurisdiction to prevent loss and injustice, especially if no objection is made by the consul of the nation to which the vessel belongs.

"Viewed in the light of these suggestions the case seems to be one where the jurisdiction may be sustained without difficulty, even though it be true that the shipper had no lien upon the ship by the law of the place where the contract of shipment was made."

The fact that in the Maggie Hammond the court was concerned with a question of cargo and not of personal injury seems to us to make no difference on principle. A case of personal injury in which the same result was reached is The Imperator, 288 F. 372, a decision of the Fifth Circuit Court of Appeals, although we believe the interpretation there given to the British law not to be entirely accurate.

To assume jurisdiction of the present proceeding in rem seems but part of an equitable policy, entirely consistent with admiralty jurisdiction. Such remedy is allowed to seamen injured on an American vessel. It is

likely that a proceeding in personam against the American owner could be pressed more rapidly by a seaman who is within an American jurisdiction than it could be against an owner in England. Therefore not to assume jurisdiction in the present suit would be tantamount to discrimination both against American seamen who would be compelled to sue in Great Britain, and also against American shipowners who could be sued in rem by American seamen, while their English competitors could not. Therefore, although admittedly the present libelant is denied a similar remedy in the British courts, it would seem proper to allow him a remedy in rem in this jurisdiction.

■ Having thus concluded that this court has jurisdiction of the present action, we now return to the question as to whether or not the vessel was unseaworthy.

Libelant contends that the vessel was unseaworthy in that (1) the hatch board would not have fallen from the other seaman's hands and struck the libelant had it not been jammed in its place, due to improper placing of one of the athwartship beams in the hatch on the orlop deck, such jamming having required a sudden jerk to loosen it; (2) that it was improper and unsafe to have left the hatch boards piled on the orlop deck before the vessel left Kingston; and (3) that there was an inadequate number of hatch boards. We find none of these contentions, however, to be tenable. The first is clearly contradicted by the testimony of the other seaman himself, namely, the proximate cause of the accident was in no sense due to any improper fitting of the hatch cover which fell, because it had been removed before the lurch occurred which caused the seaman to let go of it. As to the other two contentions, while they are contradicted by the decided weight of the credible evidence, even if we assume them to be true, this would be immaterial because the negligence thus indicated would be negligence merely of the officer in charge and can in no sense constitute unseaworthiness of the vessel herself. Furthermore, it is clear that the location and number of the hatch covers in no respect contributed to libelant's injury. Thus, such decisions as Erquit v. New York & Cuba Mail S. S. Co. (D. C.) 50 F. 325, upon which libelant relies, are not in point.

It is axiomatic that seamen must be provided a reasonably safe place in which to work and absence of same is indicative of unseaworthiness, but in the present case there are no facts upon which unseaworthiness can be predicated. The situation is controlled by The Osceola, supra, because the facts are sufficiently analogous to compel the application of the rule of law there laid down. In The Osceola, a seaman was struck and injured by a derrick which fell upon him, as a result of a strong wind, while being used in hoisting a gangway in preparation of the discharge of cargo. It was found that the master was negligent in requiring the operation under such conditions, namely, while the vessel was yet in the open sea and the wind high. Nevertheless, the Supreme Court refused recovery, stating that the circumstances surrounding the accident could not be said to indicate unseaworthiness of the vessel, and that a seaman could not recover for the negligence of the master or any member of the crew but was entitled merely to maintenance and cure because of such negligence. The Osceola has been generally followed although the distinction between a vessel's shortcomings and those of her officers or crew is not always entirely clear. See Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171; Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 42 S. Ct. 475, 66 L. Ed. 927; The Santa Clara (D. C.) 206 F. 179; Phillips v. U. S. (D. C.) 286 F. 631; The James E. Ferris (D. C.) 1 F. Supp. 1018.

■ Having determined that libelant is not entitled to recover any damages for the injury, we come to the remaining question; that is, whether he is entitled to maintenance and cure. While a seaman injured in the service of his ship is entitled to maintenance and cure regardless of the question of any further liability on the part of the ship, The Osceola, supra, Pacific S. S. Co. v. Peterson, 278 U. S. 130, 49 S. Ct. 75, 73 L. Ed. 220, such right must be invoked by the seaman in a reasonable manner. He may not refuse proffered medical attention if such proffer is reasonably adequate under the given circumstances and then later claim that he was not properly cared for. The Santa Barbara (C. C. A.) 263 F. 369. The weight of the credible evidence in the present case clearly indicates that libelant is now seeking to take unfair advantage of the owners of the Oriskany through his present claim. His injury, a slight scalp wound, was immediately reported to the master when it occurred at sea, and adequately treated with equal promptness. Libelant forthwith returned to work, which he pursued continuously throughout the voyage, rejoined the ship for her next voyage, and similarly lost no time. The complaints which he from time to time made were not

disregarded, but, on the contrary, he was given medical examinations and treatment at St. John and Kingston, and the credible evidence further refutes his own statements that upon arrival at Baltimore he was not given adequate instructions as to how he might avail himself of necessary hospital or other treatment. Similarly, we find that his attitude with respect to available medical treatment in Philadelphia indicates a lack of good faith in an effort to magnify an injury of a very minor nature, for the purpose of lending color to the present suit. We therefore find that libelant is entitled to nothing more in the form of maintenance and cure.

For the aforegoing reasons, the libel must be dismissed.