**CENTRAL HUDSON GAS AND ELECTRIC CORPORATION, Plaintiff,**

v.

**EMPRESA NAVIERA SANTA, SA, Defendant.**

Nos. 90 Civ. 6396 (VLB), 91 Civ. 1539 (VLB).

United States District Court, S.D. New York.

Feb. 25, 1994.

Mark C. Flavin, Haight, Garner, Poor & Havens, New York City, for plaintiff.

Richard A. Corwin, Walker & Corsa, New York City, for defendant.

VINCENT L. BRODERICK, District Judge.

## I

On January 16, 1988, the M/V LUNAMAR II (the "Vessel") dragged its anchor across

the power lines of plaintiff Central Hudson Gas & Electric Corporation ("Central Hudson"), leading to a finding in an *in rem* action, 88 Civ. 359 (VLB). The case was tried to the court from July 31, 1990 to August 13, 1990. The Vessel was found liable in *Central Hudson Gas & Electric Corp. v. M/V Lunamar II*, 1992 WL 210063, 1992 U.S. Dist LEXIS 12709 (88 Civ. 359, April 30, 1992). Judgment was entered against the Vessel for $4,477,584.15 (the "judgment"). See *Central Hudson Gas & Electric Corp. v. M/V Lunamar II*, 797 FSupp 1244 (S.D.N.Y. 1992), *aff'd* 993 F.2d 1534 (2d Cir.1993).

The judgment has been partially satisfied pursuant to a bond posted for release of the Vessel. Central Hudson now pursues *in personam* claims set forth in 90 Civ 6369 and 91 Civ 1539 against the bareboat charterer of the Vessel, the defendant Empresa Naviera Santa SA ("Empresa"). Central Hudson moves for summary judgment against Empresa based upon its role as bareboat charterer and its knowledge of and opportunity to participate in the trial leading to the judgment. Empresa moves to dismiss Central Hudson's complaint and to vacate an attachment of another of its vessels, the Santa Rosa De Lima (the "Second Vessel") in New Orleans. Central Hudson's motion is granted; Empresa's motions are denied. Central Hudson may submit a proposed judgment within 30 days of the date of this memorandum order, on 15 days' notice to Empresa.

## II

■ Empresa filed a "Claim of Owner" of the Vessel on July 3, 1990, prior to trial of the *in rem* suit against the Vessel, and conceded in its answer that it had a "bareboat hire purchase charterparty" with respect to the Vessel and was the employer of the crew of the Vessel as of January 16, 1988. As such at the time of the harm to Central Hudson's power lines, Empresa was responsible for the damages caused. *The Barnstable*, 181 U.S. 464, 468, 21 S.Ct. 684, 686, 45 L.Ed. 954 (1901); *Santiago v. United States*, 102 F.Supp. 425, 426 (S.D.N.Y.1952).

Empresa had ability and full and fair opportunity to participate in the 88 Civ 359 (VLB) litigation; it has not denied being kept informed of the litigation and participating in its strategy. The issues in this case and in 88 Civ 359 (VLB) are identical; they were actually litigated and decided, and the issues determined were necessary to a valid final judgment on the merits. Accordingly, Empresa is bound by the judgment. *Parklane Hosiery Co v. Shore*, 439 U.S. 322, 331–32, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979); *Beck v. Levering*, 947 F.2d 639 (2d Cir.1991); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

## III

■ Empresa claims that the same *res judicata* which causes it to be bound by the judgment in the case against the Vessel makes that judgment a bar to claims against Empresa. This contradicts the nature of *in personam* responsibility as well as that of *res judicata*. *In personam* liability is important precisely in situations where a vessel cannot be found or does not provide an adequate source of funds to pay for damages incurred by its improper operation. *Res judicata* protects parties against duplicative litigation, not against suits designed to collect unpaid portions of judgments already entered, for which the defendant involved is responsible. See generally *Belcher Co. v. M/V Maratha*, 724 F.2d 1161, 1163 (5th Cir.1984).

In a variant of this contention, Empresa relies on the former doctrine that one could not pursue both *in rem* and *in personam* claims in regard to the same matter. *Burns Bros. v. Central RR*, 202 F.2d 910 (2d Cir. 1953); *Sullivan v. Nitrate Producers*, 262 Fed. 371 (2d Cir.1919); *Bailey v. Sundberg*, 49 Fed. 583 (2d Cir.1892). This doctrine was abrogated by Rule C(1)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims, adopted February 18, 1966 which provides:

> Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

See *Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163 (5th Cir.1984).

Moreover, Central Hudson is not seeking additional damages by way of this *in personam* action, but rather merely to collect the unpaid balance of the judgment in the *in rem* action.

## IV

Central Hudson attached the Second Vessel in Louisiana, and initiated the current claims against Empresa in this district on October 3, 1990; the Louisiana action was later transferred to this court.

 The attachment of the Second Vessel was within the authority of Rule B, Supplemental Rules for Certain Admiralty and Maritime Claims, inasmuch as a maritime claim was involved and Empresa was not found in Louisiana where the attachment was filed. The Rule was not abused, inasmuch as there was a substantial risk that Central Hudson would otherwise not be able to locate sufficient assets to satisfy its claims, which in turn were not frivolous. See generally *Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1052 (11th Cir.1990); *Staronset Shipping v. North Star*, 659 F.Supp. 189 (S.D.N.Y.1987); *Integrated Container Serv. v. Starlines*, 476 F.Supp. 119 (S.D.N.Y.1979).

Empresa's claim of laches is contradicted by the fact that it did not press for an earlier trial of the issues now before me; it had been fully aware of the circumstances since January 16, 1988 when the Vessel whose crew was in Empresa's employ struck Central Hudson's power lines. See generally *Bourne Co. v. Tower Records*, 976 F.2d 99 (2d Cir.1992).

Empresa further challenges the attachment because of an agreement on January 21, 1988, at the time a bond was posted to release the Vessel (M/V LUNAMAR II), that Central Hudson would not attach "any other vessel of the same ownership or any other property belonging to the owners." On January 19, 1988, however, Central Hudson had sued the Vessel (M/V LUNAMAR II) and named as *in personam* defendant Seiriki One (Panama) ("Seiriki"). The claims against Seiriki were later dismissed. Empresa did not overtly avow its ownership of the Vessel until July 3, 1990, on the eve of trial. Accordingly, the January 21, 1988 agreement would have been entered into on the assumption that Seiriki, not Empresa, was the party involved. Regardless of what clues might have suggested to Central Hudson that Empresa was involved, Empresa had the ability to claim its status as owner both to defend the case and to put its assets before the court. The January 21 agreement necessarily referred to a known owner, not one lurking in the background.

SO ORDERED.