**UNI–PETROL GESELLSCHAFT FUR MINERALOEL PRODUKTE M.B.H., Plaintiff,**

v.

**M/T LOTUS MARU, her tackle, boilers, engines, etc.; Norsk Oljen A.S.; Lagon Overseas Ltd.; Ebisho Shipping KK; and Sumitomo Shintaku Ginko KK, Defendants.**

**No. 84 Civ. 2104 (RWS).**

United States District Court, S.D. New York.

Aug. 12, 1985.

See also, 607 F.Supp. 108.

Halley & Chalos, New York City (Richard J. Deely, New York City, of counsel), for plaintiff.

Kirlin, Campbell & Keating, New York City (Arthur E. Hoffmann, Jr., Jeffrey M. Aquilante, New York City, of counsel), for defendants.

## OPINION

SWEET, District Judge.

The defendant Sumitomo Shintaku Ginko KK ("Sumitomo") has moved under Rule 56, Fed.R.Civ.P. for summary judgment on the ground that Sumitomo had no possession and control of the navigation and operation of its vessel, the M/T LOTUS MARU, and that Sumitomo, as owner of the vessel M/T LOTUS MARU being operated under a demise or "bareboat" charter bears no *in personam* liability for loss suffered during the demise. On the findings and conclusions set forth below, the motion is granted and judgment will be entered dismissing the complaint against Sumitomo.

This motion was previously denied on the ground that discovery concerning the bareboat charter at issue had not been completed. Leave was granted to renew the motion upon the completion of discovery. An affidavit stating that the necessary dis-

covery was completed, to which the charter is annexed as an exhibit, was submitted by Sumitomo. Although Uni-Petrol submitted a letter to the court stating that it had not had its discovery requests complied with, it has not challenged the affidavit.

The M/T LOTUS MARU was chartered by Sumitomo, as registered owner, to Tonichi Sangyo Kabushikigaisha and Tokyo Kaiji Kabushikigaisha ("Tonichi" and "Tokyo"), as charterers on June 5, 1981. The period of the charter as set forth in Article 3, was from June 5, 1981 through June 5, 1989. Plaintiff's claim for an alleged shortage in a shipment of gasoline arises out of a voyage which commenced in Amsterdam, Netherlands to New York, New York on or about March 11, 1983. Accordingly, at all material times, the M/T LOTUS MARU was under charter to Tonichi and Tokyo.

The charter party contract is denominated as "Certificate of Ship Lease Contract." The charter party calls for a complete surrender of the possession and control of the vessel to charterers. Specifically, under the terms of the charter party, charterers:

(1) assume the risk that the vessel will remain operable during the pendency of the charter party,

(2) must perform all necessary repairs on the vessel,

(3) must secure vessel damage insurance and war risk insurance,

(4) must appoint, dismiss and otherwise supervise crew members,

(5) must operate the vessel for the Government of Japan if it is requisitioned during the period of the charter; and must assume the risk of damage to the vessel while the vessel is under requisition in war conditions,

(6) must pay the public taxes and imposts levied against the vessel,

(7) has the option to purchase the vessel at the end of the demise; and

(8) remain responsible for damage to the vessel during the period of the demise.

■ The terms of the contract reveal that it is, in effect, a demise or "bareboat" charter party. The test for recognizing a demise charter party is set forth in G. Gilmore and C.L. Black, Jr., the Law of Admiralty (2d Ed., 1975):

The test is one of "control"; if the owner retains control over the vessel, merely carrying the goods furnished or designated by the charter, the charter is not a demise; if the control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have to do with a demise. As the Supreme Court has said, "To create a demise the owner of the vessel must completely and exclusively relinquish 'possession, command, and navigation' thereof to the demisee." (id. at p. 240)

See also Guzman v. Pichirilo, 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962); Schnell v. United States, 166 F.2d 479, 480 (2d Cir.1948); Fitzgerald v. A.L. Burbank & Co., 451 F.2d 670, 676 (2d Cir.1971).

■ The effect of the bareboat charter party arrangement is that a charterer is considered the owner of the vessel pro hac vice. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Bergan v. Int. Freighting Corp., 254 F.2d 231, 232 (2d Cir.1958); Klishewich v. Mediterranean Agencies, Inc., 302 F.Supp. 712 (E.D.N.Y. 1969). The consequences of a charterer's assumption of the owner's position are described in The Law of Admiralty, supra, at p. 242:

... In general, all in personam liabilities arising out of the ship's operation are brought home to the demise charterer. ... The vessel, so far as third persons are considered, is his vessel, and the men are his men; such of their defaults as are attributable to the owner and employer under respondeat superior doctrines are his to answer for. See, e.g., the Barnstable, 181 U.S. 464, 21 S.Ct. 684 [45 L.Ed. 954] (1901), where the de-

mise charter was held primarily held liable for collision damage.

The liability of the ship owner is limited;

... An owner who has demised his ship is not indeed liable to anyone but the demisee under his warranty of seaworthiness for any loss or injury suffered during the demise. Such liabilities sound in contract and he has not made any contract with anyone else.

*Cannella v. Lykes Bros. S.S. Co.*, 174 F.2d 794, 796 (2d Cir.1949). *See also In re Marine Sulphur Queen*, 460 F.2d 89 (2d Cir.1972) ("... an owner-demiser is generally only liable where the injury results from unseaworthiness or negligence which existed prior to the delivery of the vessel to the demised charterer."); *Santiago v. United States*, 102 F.Supp. 425, 426 (S.D. N.Y.1952).

■ The subject matter of the instant action is an alleged shortage in a shipment of gasoline transported from Amsterdam to New York. This potential liability unquestionably arises out of the operation of the vessel by charterers. As such, charterers must bear what liability, if any, there is for the alleged loss. The owner has no other contractual arrangement with the charterers, Tokyo and Tonichi, other than the contract of charter party. The contract delegated complete control of the vessel to charterers. Sumitomo thus bears no *in personam* liability for plaintiff's alleged loss of cargo and, accordingly, plaintiff has not asserted a claim upon which relief can be granted against Sumitomo.

IT IS SO ORDERED.