MARITIMA ANTARES, S.A. and
Naviera Letasa, S.A., Plaintiffs,

v.

The VESSEL ESSI CAMILLA, her engines, boilers, tackle, etc., in rem and Ruud-Pederesen, B.J., A/S, her owners, in personam, Defendants.

Civ. A. No. 81–222–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 29, 1986.

Hugh S. Meredith, Norfolk, Va., for plaintiffs.

Philip N. Davey, Norfolk, Va., for defendants.

### ORDER

CLARKE, District Judge.

This matter comes before the Court on a motion by defendants to quash a writ of execution issued against the M/V ESSI CAMILLA. Plaintiff, Maritima Antares, S.A. (Antares), caused the writ to be issued in an attempt to recover the balance of a judgment previously rendered by the Court against the aforesaid vessel.

On December 25, 1980, a collision among vessels in the Chesapeake Bay resulted in damage to the M/V ESSI CAMILLA, the M/V MERCEDES MARIA, and the M/V NAIAO. All claims were consolidated into an action filed by Naviera Letasa, S.A., the previous owner of the MERCEDES MARIA, against the ESSI CAMILLA, *in rem*, and her owners, Ruud-Pedersen, A/S, *in personam*.

Subsequent to the initiation of this action, the insurer of the ESSI CAMILLA, Storebrand Marine Insurance Company (Storebrand), gave a letter of undertaking in the amount of $1,750,000 to Naviera Letasa. In exchange for the posting of this security, Naviera Letasa agreed to refrain from arresting the ESSI CAMILLA relative to any action commenced against the vessel. During the course of this litigation, Antares purchased the MERCEDES MARIA from Naviera Letasa and by agreement with Storebrand, assumed the obligation to refrain from arresting the ESSI CAMILLA. Antares was also joined in these proceedings as a party-plaintiff.

Addressing the issue of liability, the Court found that the collision was due solely to the fault of the ESSI CAMILLA. Damages in the amount of $712,394.94, with interest, were assessed against the vessel, *in rem*, and Ruud-Pedersen, *in personam*. Upon review by the United States Court of Appeals for the Fourth Circuit, the judgment of this Court was affirmed.

Subsequently, Antares and Storebrand agreed to reduce the amount of security in the letter of undertaking to $713,053.51.

In satisfaction of the Court's judgment, Storebrand has to date tendered approximately $843,648.26. Antares maintains, however, that a large sum of interest has not been paid. In an effort to collect this amount, Antares caused a writ of execution to issue against the ESSI CAMILLA. Defendants, objecting to the re-arrest of the vessel for the same claim, have filed a motion to quash the writ and to discharge the letter of guarantee issued by Storebrand on February 14, 1986. Having reviewed the record and afforded the parties oral argument, the Court GRANTS defendants' motion.

■ It is well established that when security is posted in exchange for the release of a vessel arrested *in rem*, the security provided becomes a complete substitute for the res or the property seized. *U.S. v. Ames*, 9 Otto 35, 99 U.S. 35, 25 L.Ed. 295 (1878); *U.S. v. Tito Campanella Societa Di Navigazone*, 214 F.2d 457 (4th Cir.1954); *U.S. v. Ohio Valley Co., Inc.*, 510 F.2d 1184 (7th Cir.1975). This principle holds true whether the security be in the form of cash, bond or stipulation for value. Although plaintiff attempted to argue that a letter of undertaking was in some way less adequate than other forms of security, the Court cannot agree. A letter of undertaking provides an equally acceptable means of warranting payment of damage awards.

■ Further, the Court also notes that the consideration in exchange for the security need not be the actual release of the vessel but may, as in the present case, be an agreement not to arrest a vessel against which a claim is pending. *See J.K. Welding Co., Inc. v. Gotham Marine Corp.*, 47 F.2d 332 (S.D.N.Y.1931).

■ Thus, the letter of undertaking between Antares and Storebrand, as a substitute for the res, had the effect of transferring the maritime lien from the vessel to the security fund. In all but extraordinary

cases, the vessel cannot again be held liable *in rem* for the same claim. As stated in *Tito Campanella,* "the vessel is discharged forever from the lien which was the foundation of the libel." 214 F.2d at 458.

In cases where the security provided is not sufficient to satisfy the judgment, the Court must determine whether the inadequacy was due to acts of fraud or misrepresentation. Only then may the re-arrest be justified. If, however, the deficiency is the result of the mistaken beliefs and expectations of the parties, the vessel cannot be seized a second time. *Industria Nacional Del Papel, CA. v. M/V ALBERT F,* 730 F.2d 622 (11th Cir.1984).

In the case at hand, the parties clearly believed that the amount of security, as reduced, would be sufficient to cover the damages assessed by the Court. By amendment of the letter of undertaking, the parties agreed to limit Storebrand's liability to a sum roughly equivalent to the Court's award of damages. Had the need for additional security been obvious at that time, Antares would not have agreed to reduce the amount originally provided by Storebrand. Counsel for Antares conceded during oral argument that their estimations had been erroneous. Under these circumstances, new security cannot be obtained through the re-arrest of the ESSI CAMILLA.

In addition to established case law, the Court must also consider the practical effects of adopting plaintiff's reasoning. Insurers of ships, such as Storebrand, would be reluctant to issue letters of undertaking knowing that the agreements would not limit their exposure to liability. Furthermore, a plaintiff who receives payment on a security bond and then has further recourse against the vessel may recover amounts in excess of the ship's worth. Such a recovery would circumvent the policy which allows under some conditions an owner to limit his liability to the value of the vessel. *See* 46 U.S.C. § 183(a); Rule F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

In support of the issuance of the writ of execution, Antares cites *United Cooperatives of Ontario v. M/V GOOD TRADER,* 1985 AMC 2427, 622 F.Supp. 335 (E.D.La. 1985). There the court found, under Canadian law, that a letter of undertaking will not bar the re-arrest of a vessel. The decision in *GOOD TRADER* is easily distinguished not only by the application of Canadian precedent, but by the fact that the parties consented to the re-arrest of the ship despite the letter of undertaking.

■ As a second line of argument, Antares contends that the doctrine of *res judicata* prevents defendants from objecting to the *in rem* judgment entered against the ESSI CAMILLA. Antares suggests that had the defendants intended to limit liability to the amount of the letter of undertaking, the matter should have been raised at trial or on appeal. According to Antares, once the *in rem* decree became final, the vessel was subject to re-arrest as a means of satisfying the judgment.

The Court finds plaintiff's position untenable. Clearly, plaintiff is implying that the Court, in rendering judgment *in rem* against the ESSI CAMILLA rather than against the security fund itself, did not intend to spare the vessel from enforcement proceedings. What apparently escapes plaintiff's notice, however, is the necessity of rendering judgment against the ESSI CAMILLA, a named defendant, in order that the letter of undertaking be implemented. For all purposes, the letter of undertaking was a substitute for the vessel. Thus, the *in rem* decree operated, in effect, as a judgment against the security. Moreover, the form of ruling which the Court used followed an acceptable and purposeful practice in maritime procedure.

Thus, in accordance with the findings herein, the Court GRANTS defendants' motion to quash the writ of execution. It is further ORDERED that the letter of guarantee issued by Storebrand Marine Insurance Company, Ltd. on February 14, 1986 be released and discharged.

IT IS SO ORDERED.