CENTRAL HUDSON GAS & ELECTRIC
CORPORATION, Plaintiff–Appellee,

v.

EMPRESA NAVIERA SANTA
S.A., Defendant–Appellant.

No. 513, Docket 94–7477.

United States Court of Appeals,
Second Circuit.

Argued Dec. 16, 1994.

Decided May 17, 1995.

Richard A. Corwin, New York City (Lynne A. Borchers, Walker & Corsa, New York City, of counsel), for appellant.

Mark C. Flavin, New York City (James H. Hohenstein, Timothy J. McDonnell, Haight, Gardner, Poor & Havens, New York City, of counsel), for appellee.

Before: FEINBERG, MESKILL and JACOBS, Circuit Judges.

MESKILL, Circuit Judge:

This appeal involves the interplay of the doctrines of res judicata and collateral estoppel within the confines of admiralty jurisdiction. Empresa Naviera Santa S.A. (Empresa) appeals the decision of the United States District Court for the Southern District of New York, Broderick, *J.*, entering summary judgment against Empresa *in personam* following a judgment *in rem* against a vessel chartered by Empresa. As we find that res judicata does not bar the claims asserted, and that Empresa is collaterally estopped from contesting the district court's prior determinations, we affirm.

## BACKGROUND

This case arose on January 16, 1988 when the M/V LUNAMAR II (the Vessel), a motor tanker flying the Panamanian flag, dragged an anchor on a voyage up the Hudson River, thereby damaging an electrical cable pipeline owned by Central Hudson Gas & Electric Corporation (Central Hudson). Central Hudson filed suit against the Vessel *in rem* and Seiriki One (Panama) S.A. (Seiriki), the Vessel's registered owner, three days later (the *in rem* action). On January 21, 1988 the Vessel's underwriters delivered a $3 million letter of undertaking to Central Hudson to avoid the arrest of the Vessel. The letter, moreover, constituted only an estimate of the damage to the cable pipeline, given that the portion of the river where the accident occurred was frozen and a more accurate estimate could not be obtained immediately.

Although the Vessel's crew had stated that they were employed by Empresa, a foreign corporation operating the Vessel as bareboat charterparty, the letter of undertaking was executed on behalf of Seiriki as registered owner and did not expressly include any charterparties. Central Hudson thereafter sought to determine the party or parties in control of the Vessel by filing an interrogatory during discovery requesting the names of all of its charterparties. The defendants in the *in rem* action did not respond to this interrogatory, even after having been ordered to do so by a magistrate judge on May 2, 1989. On July 3, 1990, however, shortly before trial of the *in rem* action, Seiriki and Empresa filed restricted appearances as the Vessel's registered owner and owner *"pro hac vice,"* respectively, pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (Supplemental Rules). In filing the restricted appearance Empresa confirmed its relationship to the Vessel for the first time.

A bench trial of the *in rem* action then commenced on July 31, 1990. Seiriki and Empresa participated in the defense of the Vessel in their representative capacities. On October 3, 1990, following the conclusion of the trial but prior to the entry of the district court's decision, Central Hudson filed a *quasi in rem* action in Louisiana to attach the SANTA ROSA de LIMA (SANTA ROSA), another ship operated by Empresa. Additionally on that date Central Hudson filed an *in personam* suit against Empresa in the Southern District of New York. Both actions alleged that Empresa was personally liable for the damage to the cable pipeline. The two actions were consolidated in the Southern District before Judge Broderick and were placed in abeyance pending his decision in the *in rem* action. The district court issued its findings in the *in rem* action on April 7, 1992, dismissing the *in personam* claim against Seiriki for lack of service and finding the Vessel liable on the *in rem* claim. On September 9, 1992 the court entered judgment in the amount of $4,477,584.15, constituting approximately $3.37 million in damages and $1.1 million in prejudgment interest, together with costs. We affirmed that decision. *See Central Hudson Gas & Elec. Corp. v. M/V LUNAMAR II,* 797 F.Supp. 1244 (S.D.N.Y.1992) (*LUNAMAR II* ), aff'd mem., 993 F.2d 1534 (2d Cir.1993). The judgment was only partially satisfied through the $3 million letter of undertaking, and an amount of $1,486,134.44 remained unsatisfied.

Judge Broderick then activated the consolidated *in personam* and *quasi in rem* cases. Empresa moved to dismiss both cases and to vacate the attachment of the SANTA ROSA, arguing that under the doctrine of *res judicata* the *in rem* judgment against the Vessel barred the subsequent lawsuits. Central Hudson cross-moved for summary judgment, arguing that Empresa was collaterally estopped from relitigating the issues of liability and damages. Judge Broderick denied Empresa's motions and entered summary judgment in favor of Central Hudson, concluding that the consolidated action was, in essence, simply composed of lawsuits filed to collect on the unpaid portion of the *in rem* judgment. Judge Broderick also rejected Empresa's argument that Central Hudson could not pursue both *in rem* and *in personam* claims for the same injury. The district court then awarded prejudgment interest of $364,761.39 on the $1,486,134.44 remaining unpaid from the *in rem* judgment, and en-

tered judgment against Empresa for the total of $1,850,895.83. Empresa now appeals.

## DISCUSSION

■ The well established standard for reviewing a grant of summary judgment requires us to draw all inferences in favor of the non-moving party. *See Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 872 (2d Cir.1991). Reviewing de novo the question whether any genuine issues of material fact exist, we affirm only when it is clear no reasonable trier of fact could find in favor of appellant. *See H.L. Hayden Co. v. Siemens Medical Sys.*, 879 F.2d 1005, 1011 (2d Cir.1989).

### I. *Jurisdiction*

■ Empresa initially contends that in the prior action the district court possessed jurisdiction only to the extent of the value of the *res* or the amount of any bond substituted therefor, and thus lacked jurisdiction to enter a judgment in excess of the value of the $3 million letter of undertaking. Indeed, Empresa points to the rule that "an *in rem* action is an action against the arrested *res* itself and any judgment is thus limited to the value thereof or the value of the bond or stipulation substituted for the *res* to obtain its release." 7A James Wm. Moore, Moore's Federal Practice ¶ E.16[2] at E–779 (2d ed. 1995) (footnote omitted; emphasis added).

■ While this rule generally governs *in rem* actions, it is axiomatic that a district court sitting in admiralty exercises "powers akin to those of a court of equity." *The MINNETONKA*, 146 F. 509, 515 (2d Cir.), *cert. denied*, 203 U.S. 589, 27 S.Ct. 777, 51 L.Ed. 330 (1906). By virtue of those powers, a court possesses jurisdiction to enter judgment in excess of the value of an arrested *res*. Indeed, as we explained in *MINNETONKA*, "[a] court of admiralty ... should not be hampered in its efforts to reach ... substantial justice." *Id.; see also Mosher v. Tate*, 182 F.2d 475, 479 (9th Cir.1950) ("[W]e think that under all of the circumstances of this case and in order to achieve substantial justice the trial court has power to enter a personal decree against appellees without any additional service of process or supplemental libel."); *The FAIRISLE*, 76 F.Supp. 27, 32 (D.Md.1947) (holding "no principle of admiralty law ... prohibits this Court from rendering a decree against claimant for the total amount of the award," even where award exceeds amount of bond posted as security), *aff'd sub nom. Waterman S.S. Corp. v. Dean*, 171 F.2d 408 (4th Cir.1948); *see generally* 7A Moore's Federal Practice ¶ E.16[2] at E–780 ("[I]n some instances the owner or claimant who procures the release of the res or who enters a restricted appearance to defend the res may be held personally accountable for damages in excess of the value of the arrested res or the substitute bond or stipulation provided to obtain its release.").[1] We find, under the circumstances of this case, that the district court properly exercised its authority as an admiralty court to enter a judgment in excess of the value of the letter of undertaking.

---

1. The cases on which Empresa relies actually support this general proposition. For example, Empresa cites *Industria Nacional del Papel, C.A. v. M/V "ALBERT F"*, 730 F.2d 622 (11th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 404 (1984), in support of its argument that a judgment on an *in rem* claim must be limited to the value of the *res. Industria Nacional*, however, concerned a claimant who sought an order compelling a vessel owner to post additional security. The Eleventh Circuit simply held that the claimant could not obtain an *in personam* judgment against the vessel owner for the *additional* amount because the district court had no independent basis on which to exercise personal jurisdiction over the owner. *See id.* at 627. Likewise, *Maritima Antares, S.A. v. Vessel ESSI CAMILLA*, 633 F.Supp. 694 (E.D.Va.1986), also cited by Empresa for the same proposition, similarly fails. *Maritima Antares* concerned the issue of whether the security posted for a vessel's release became a complete substitute for that vessel where the letter of undertaking included an agreement not to rearrest the vessel. The court reached the unassailable conclusion that a vessel cannot be held liable twice *in rem* for the same claim. *See id.* at 697.

This appeal also can be distinguished from those cases in which claimants seek duplicative damages, a matter not at issue here. *See, e.g., Beck v. Levering*, 947 F.2d 639, 642 (2d Cir.1991) (per curiam) (no res judicata issue where subsequent suit did not create duplicative award but merely decreased second judgment by amount awarded in prior suit), *cert. denied*, 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992).

In essence, Empresa's argument rests on a confusion between damages and liability. The district court's decision in *LUNAMAR II* determined that the damage to Central Hudson's cable pipeline was caused by the Vessel, and calculated the value of this damage at $4,477,584.15. This factual finding became final when we affirmed that judgment. *See In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir.1991) (where district court determined issue in earlier case and where appellate court did not disapprove, it was law of the case). Thus, the amount of Central Hudson's damages is not at issue here.

The question, rather, is whether Central Hudson can collect on the unrecovered portion of the *in rem* judgment from Empresa in this *in personam* action. Central Hudson cannot, of course, simply execute on the *in rem* judgment against a defendant not yet found to be liable. *See Cooper v. Reynolds*, 77 U.S. (10 Wall.) 308, 318, 19 L.Ed. 931 (1870) ("[T]he judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted."). Therefore, Empresa must be found liable *in personam* before it can be held responsible for the uncollected portion of the *in rem* judgment. This requirement, however, is legally distinct from the issue of whether the district court possessed the authority to enter judgment in excess of the value of the *res*. We thus turn to the proper question raised by this appeal: whether Empresa can be held liable *in personam* for the uncollected portion of the *in rem* judgment.

## II. *Can Central Hudson Bring This* In Personam *Action?*

### A. *Whether an* In Rem *Judgment Bars Subsequent* In Personam *Suits*

Empresa next asserts that since the prior judgment was entered against the Vessel *in rem*, that judgment bars any subsequent *in personam* claim. Empresa bases this argument on the distinction between *in rem* and *in personam* jurisdiction in admiralty law. Central Hudson argued below, and the district court agreed, that the 1966 Amendments to the Admiralty Rules specifically permit separate *in rem* and *in personam* actions. We concur.

Empresa relies on three prior decisions in this Circuit to support its argument that a litigant cannot pursue separate *in rem* and *in personam* claims regarding the same injury in sequential suits: *Burns Bros. v. Central Railroad*, 202 F.2d 910 (2d Cir.1953); *Sullivan v. Nitrate Producers' S.S. Co.*, 262 F. 371 (2d Cir.1919); and *Bailey v. Sundberg*, 49 F. 583 (2d Cir.1892), *cert. denied*, 154 U.S. 494, 14 S.Ct. 1142, 38 L.Ed. 1078 (1894). *Burns Bros.* involved a plaintiff who lost a previous decision *in personam* against the owner of a carfloat (although the plaintiff won against the co-defendant carfloat operator) following a collision between the carfloat and the plaintiff's barge, and who subsequently filed an action *in rem* against the carfloat. Judge Learned Hand, after reviewing the *Sullivan* and *Bailey* decisions, concluded that "a decree *in rem* is a bar to a suit *in personam*, and we cannot see why the rule should not work both ways." *Burns Bros.*, 202 F.2d at 913. The Court then found:

> When the plaintiff has two alternative remedies available to him upon the same "cause of action," he may not reserve one and sue upon the other, and a judgment for the defendant upon one will be a bar to a later suit upon the other; but obviously this rule ought not to apply when at the time of the first action only one of the two remedies was available to the plaintiff.... If we regard the "cause of action" at bar as the same as that in the first suit, as we must, the present libel *in rem* was an alternative remedy to the libel *in personam*, so that this appeal comes down to whether a libel *in rem* was "available" to Burns Bros. in the first suit, since, if it was, it could have been joined with the libel *in personam* under the 14th Admiralty Rule [now Rule C(1)(b) of the Supplemental Rules].

*Id.*

Judge Hand's discussion raises several points pertinent to the instant appeal. We note initially that *Burns Bros.* did not con-

cern a suit filed to collect damages established by a prior judgment, but involved a suit to establish liability and damages anew. *Burns Bros.* thus does not govern a suit essentially seeking collection of an unpaid portion of a judgment against a joint tortfeasor. *See generally* Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty § 9–17, at 614 n. 73 (2d ed. 1975) ("A plaintiff who has recovered a judgment in an *in rem* action which remains in part unsatisfied may proceed against the owner *in personam* to recover the deficiency.").

■ Second, as the district court in the instant case noted, the Supplemental Rules do not require a party to bring *in rem* and *in personam* claims in the same action. Rule C(1)(b) of the Supplemental Rules specifically provides that "a party who may proceed *in rem* may also, or in the alternative, proceed *in personam* against any person who may be liable." (emphasis added). Thus Central Hudson is barred from bringing its *in personam* claim against Empresa, if at all, by the doctrine of res judicata and not by the Admiralty Rules, a conclusion supported by Judge Hand's holding in *Burns Bros. See* 202 F.2d at 912–13. Indeed, while Central Hudson and the district court both read Rule C(1)(b) to "abrogate" the prior doctrine set forth in *Burns Bros.*, we decline to do so. Instead, *Burns Bros.* and its predecessors should be read simply to apply res judicata principles to successive *in rem* and *in personam* actions, a holding with which Rule C(1)(b) is not inconsistent.[2]

Finally, the 1966 Amendments to the Admiralty Rules did not affect the previously existing right of plaintiffs to file separate or successive *in rem* and *in personam* actions. As reflected in the Advisory Committee Notes to the 1966 Amendments, the Amendments were not intended to change prior law:

> The main concern of Admiralty Rules 13–18 [now Supplemental Rule E] was with the question whether certain actions might

be brought *in rem* or also, or in the alternative, *in personam*. Essentially, therefore, these rules deal with questions of substantive law, for in general an action *in rem* may be brought to enforce any maritime lien, and no action *in personam* may be brought when the substantive law imposes no personal liability.

Supplemental Rule C(1) advisory committee's note (emphasis added). The fact that the 1966 Amendments did not affect *in rem* and *in personam* filings is further reflected in the case law. *Compare United States v. Matson Nav. Co.*, 201 F.2d 610, 618 (9th Cir.1953) (pre-Amendment case holding that where causes of action arose from single collision, claimant could proceed *in rem* against ship and *in personam* against owners and masters), *with Belcher Co. v. M/V MARATHA MARINER*, 724 F.2d 1161, 1163 (5th Cir. 1984) (post-Amendment case holding that "[u]nder the admiralty law of the United States, *in personam* and *in rem* actions may arise from the same claim, and may be brought separately or in the same suit"). Accordingly, we find that this *in personam* action is barred by the *in rem* judgment, if at all, only by the doctrine of res judicata, to which we now turn.

### B. *Res Judicata*

■ The doctrine of res judicata, or claim preclusion, holds that following entry of a valid final judgment, "the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *C.I.R. v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)); *In re Teltronics Servs.*, 762 F.2d 185, 190 (2d Cir.

---

**2.** The dissenting opinion relies on *The B & B NO. 10*, 121 F.2d 704 (2d Cir.1941), in support of the argument that the doctrine of res judicata bars successive *in rem* and *in personam* actions. *B & B NO. 10*, however, involved a claimant that split its cause of action, attempting to rely on a prior judgment of liability for damages to two of its barges in a subsequent action seeking damages to a third. *See id. B & B NO. 10*, therefore, involved an action to recover additional damages, not an action to collect damages established in a prior action, and thus the holding is inapplicable here.

1985).[3] Empresa contends that res judicata bars this action because Central Hudson could have sued Empresa in its *in personam* capacity during the *in rem* action, but failed to do so. In particular, Empresa asserts that Central Hudson knew of its status as the Vessel's bareboat charterparty as early as August 1988, from depositions taken of the Vessel's crew, and that it was amenable to the district court's jurisdiction because it maintained a shipping agent in New York. It is undisputed that Central Hudson knew of Empresa's relationship to the Vessel one month prior to trial, and did not move to amend its complaint to add an *in personam* claim. Central Hudson contends, however, that it did not have sufficient knowledge to name Empresa as a defendant because Empresa concealed its interests in the Vessel as part owner and bareboat charterparty, despite a discovery order by a magistrate judge. Central Hudson argues that Empresa should not now be rewarded by the barring of this action for this obstruction of discovery.

■ Such allegations may be considered by this Court in assessing the availability of a claim for res judicata purposes. *See La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1276 (2d Cir.1974). While the district court noted that Empresa's specific interest in the Vessel was "lurking in the background" of the *in rem* action, however, the court did not address directly the issue of Empresa's availability. We need not do so either, as we find Central Hudson's claim would not be barred by res judicata even if Empresa had been available.

■ Notably, Central Hudson did not seek duplicative or additional damages in this action, and the essence of its claim was that Empresa, as the operator of the Vessel, was also liable as a joint tortfeasor for the damage to its cable pipeline. When a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties. *See United States v. Lacey*, 982 F.2d 410, 412 (10th Cir.1992); *White v. Kelsey*, 935 F.2d 968, 970 (8th Cir.1991); *Gill & Duffus Servs. v. A.M. Nural Islam*, 675 F.2d 404, 406–07 (D.C.Cir.1982) (per curiam); *McClelland v. Facteau*, 610 F.2d 693, 695 n. 1 (10th Cir. 1979); *see generally* Restatement (Second) of Judgments § 49 cmt. a (1982) (For preclusion purposes, "the claim against others who are liable for the same harm is regarded as separate."); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4407, at 52–53 ("A single plaintiff ... has as many causes of action as there are defendants to pursue."). Since Central Hudson's *in personam* claim against Empresa is distinct from its claim against the Vessel *in rem*, and since the *in personam* claim has not been adjudicated, res judicata does not bar this action. *See Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) ("A cause of action which a non-party has vicariously asserted differs by definition from that which he subsequently seeks to litigate in his own right."); *Gargiul v. Tompkins*, 790 F.2d 265, 272–73 (2d Cir.1986).

■ This assumes, of course, that Empresa was not in privity with the Vessel, despite its assistance in the defense of the *in rem* action. Privity traditionally has denoted a "successive relationship to the same rights of property." *Bailey*, 49 F. at 585. In its modern form, the principle of privity bars relitigation of the same cause of action

---

**3.** As a preliminary matter, since both parties attempt to employ the preclusive effects of the judgment in the *in rem* action, this appeal appears to raise issues traditionally considered under the rule of mutuality. This rule conferred the positive preclusive effects of a judgment only on those parties who also would have been bound by any unfavorable preclusive effects of that judgment. *See* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4463, at 559 (1981). Following the Supreme Court's decision in *Nevada v. United States*, 463 U.S. 110, 143–44, 103 S.Ct. 2906, 2924–25, 77 L.Ed.2d 509 (1983), however, this Circuit generally no longer considers mutuality for preclusion purposes. *See Amalgamated Sugar Co. v. NL Indus.*, 825 F.2d 634, 640 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *Cahill v. Arthur Andersen & Co.*, 659 F.Supp. 1115, 1120–21 (S.D.N.Y.1986), *aff'd*, 822 F.2d 14 (2d Cir.1987) (per curiam). We thus need not consider the preclusive effects of a different result in the *in rem* action when reviewing the arguments of either party.

against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion. *See Amalgamated Sugar Co. v. NL Indus.*, 825 F.2d 634, 640 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). This determination often requires a court to inquire whether a party "control[led] or substantially participate[d] in the control of the presentation on behalf of a party" to the prior action. *National Fuel Gas Distribution Corp. v. TGX Corp.*, 950 F.2d 829, 839 (2d Cir.1991) (quotation omitted); *see also Alpert's Newspaper Delivery v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989).

■ Undoubtedly, Empresa participated in and shared control of the defense of the Vessel in the *in rem* action. Empresa did so, however, in a representative capacity. Its interests in the Vessel therefore were not identical to the interests it defended in an action alleging *in personam* liability. *Cf. United States v. International Bhd. of Teamsters*, 964 F.2d 180, 184 (2d Cir.1992) (concluding privity requires coinciding interests to third parties). Because the res judicata effects of the *in rem* judgment affect Empresa only in its representative capacity, we find that Empresa was not in privity with the Vessel. *See Hurt v. Pullman, Inc.*, 764 F.2d 1443, 1448 (11th Cir.1985); *cf.* Restatement (Second) of Judgments § 39 cmt. e (1982) ("[A] trustee who takes control of litigation involving another in order to protect the trust is not on that account bound in a subsequent action in which he appears in his individual capacity.").

■ Further, a finding of privity in this instance would negate the principle that "representative capacities must be held separate in order to ensure vigorous pursuit of litigation without concern about the possible impact on other interests." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4451, at 436. While the distinction between *in rem* and *in personam* jurisdiction in admiralty cases has its detractors, *see, e.g.,* Law of Admiralty § 9–18, at 615–16, it remains a bedrock principle of admiralty law. We see no reason to undermine that distinction here. Accordingly, we find that the *in rem* judgment does not bar this action.

### III. *Collateral Estoppel*

■ Finding that neither the Admiralty Rules nor res judicata bar this *in personam* action, we next address Empresa's contention that the district court incorrectly made a finding of *in personam* liability by applying the doctrine of collateral estoppel. Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment. *See Beck v. Levering*, 947 F.2d 639, 642 (2d Cir.1991) (per curiam), *cert. denied sub nom., Levy v. Martin*, 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986) (setting forth four-part test), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). If these requirements were met, the district court properly estopped Empresa from relitigating the issue of liability for the damage to the cable pipeline. *See Beck*, 947 F.2d at 642 (applying *Gelb* test to offensive collateral estoppel).

■ Empresa does not contend that the district court improperly estopped it from litigating the issue of Central Hudson's quantum of damages, and contests only the district court's finding of liability. Specifically, Empresa argues that (1) it had no "full and fair opportunity" to litigate its liability in the *in rem* action, (2) its liability was neither litigated nor decided in that action, and (3) since Central Hudson had the opportunity to join Empresa as a defendant in the *in rem* action and failed to do so, collateral estoppel does not apply. We reject each of these arguments.

Given its control of and participation in the litigation, Empresa cannot seriously contend that it had no "full and fair opportunity" to litigate all issues decided in the *in rem* trial. *Cf. Sherman v. Kirshman*, 369 F.2d 886 (2d Cir.1966) (refusing to enforce judgment entered against defendants in another federal district court where the prior judgment was *in rem* and where defendants neither appeared nor litigated action). We thus turn to the central issue: whether Empresa's liability was fully litigated and decided in the *in rem* action.

██ Empresa first contends that its liability was not determined in the *in rem* action because the district court never distinguished whether the Vessel's crew, or the pilots Empresa was required to hire to steer the Vessel up the Hudson River, were responsible for the damage to the cable pipeline. Empresa offered the possible negligence of the compulsory pilots as an affirmative defense in the instant action. Empresa thus bore the burden of establishing the pilots' exclusive negligence. *See Avondale Indus. v. International Marine Carriers*, 15 F.3d 489, 492–93 (5th Cir.1994) (discussing negligence standards governing relationship of vessel master to compulsory pilot). Empresa failed to provide any evidence of this defense, much less enough to establish a genuine issue of material fact for trial. *See* Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Further, neither Empresa nor Seiriki even raised this defense in the *in rem* trial, nor did Empresa seek to implead the pilots as co-defendants during either action. *See The CHINA*, 74 U.S. (7 Wall.) 53, 64, 19 L.Ed. 67 (1868) (party asserting compulsory pilot defense must show "affirmatively that the pilot was in fault, and that there was no fault on the part of the officers or crew, which might have been in any degree conducive to the damage") (quotation omitted). Empresa's compulsory pilot defense, in short, has no bearing here.

██ Empresa also contends that the district court's liability determination in the *in rem* action was limited solely to the Vessel, and that it made no finding of Empresa's liability due to the negligence of its officers and crew. The parties entered into a stipulation during the *in rem* trial, however, in which they agreed that the Vessel's officers and crew were negligent if the court determined that the Vessel's anchor caused the damage to the pipeline: [4]

It has been stipulated by counsel for Central Hudson and counsel for the defendant that if the Court finds the LUNAMAR II dragged her starboard anchor on the Hudson River, then the LUNAMAR II stipulates that relevant statutory regulations and proper navigational precautions and practices were not followed by the crew and officers of the LUNAMAR II.

██ The district court then explicitly found that the damage to Central Hudson's pipeline was caused by the dragging of the Vessel's anchor, thereby also determining the negligence of the Vessel's officers and crew. Moreover, as the bareboat charterparty, Empresa was considered the owner of the Vessel *pro hac vice. See Reed v. Steamship YAKA*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); *Bergan v. International Freighting Corp.*, 254 F.2d 231, 232 (2d Cir. 1958). Thus, Empresa was clearly liable under the principle of *respondeat superior* for the negligence of the Vessel's officers and crew, who were in fact Empresa's employees. *See The BARNSTABLE*, 181 U.S. 464, 468, 21 S.Ct. 684, 686, 45 L.Ed. 954 (1901) ("As the charterers hired the Barnstable for a definite period, and agreed to select their

4. Empresa argues that because the parties did not manifest an intent to be bound by this stipulation in a subsequent action, the issue of the negligence of the officers and crew was not "actually litigated" for estoppel purposes in the *in rem* action. *See Red Lake Band v. United States*, 607 F.2d 930, 934, 221 Ct.Cl. 325 (Ct.Cl.1979). Because a finding of negligence on the part of the Vessel's officers and crew was essential to the district court's determination of liability, we find that the parties intended the stipulation to be binding. While it is true, as the dissenting opinion appears to argue, that not every stipulation necessary to a finding of liability sufficiently manifests the parties' intent to be bound in subsequent litigation, as the district court held the facts established in the *in rem* action are sufficient to support such a finding here. We therefore reject this argument.

own officers and crew, ... the charterers would be liable for the consequences of negligence in her navigation."); *Uni–Petrol Gesellschaft Fur Mineraloel Produkte M.B.H. v. M/T LOTUS MARU,* 615 F.Supp. 78, 80–81 (S.D.N.Y.1985). The district court's determination that the Vessel caused the damage to the pipeline therefore entailed a finding of Empresa's liability, and that issue was both necessary to the *in rem* judgment and fully litigated by the parties.

Finally, Empresa argues that it was available as a defendant in the *in rem* action, and asserts that Central Hudson's failure to join it as a defendant precludes its reliance on the collateral estoppel doctrine. Empresa relies on dicta in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), as support for its argument. · There, the Supreme Court stated the "general rule" that offensive collateral estoppel should not apply "in cases where a plaintiff could easily have joined in the earlier action or where ... the application of offensive collateral estoppel would be unfair to a defendant." *Id.* at 331, 99 S.Ct. at 652. *Parklane Hosiery* concerned a plaintiff, filing suit on behalf of a class of stockholders, who failed to join an earlier action filed against the same defendants on the same cause of action by the Securities and Exchange Commission (SEC). The Supreme Court did not apply the general rule to the class action, finding that the stockholders probably could not have joined in the action filed by the SEC. *See id.* at 331–33, 99 S.Ct. at 651–53. These facts do not suggest the inapplicability of collateral estoppel to successive cases involving the same plaintiff and separate defendants, and in any case the *Parklane Hosiery* Court noted the "preferable approach ... [is] to grant trial courts broad discretion" in determining when collateral estoppel should apply. *Id.* at 331, 99 S.Ct. at 651. We agree with the district court that the facts of this case amply support the application of collateral estoppel. *See, e.g., Beck,* 947 F.2d at 642 (affirming use of offensive collateral estoppel against defendants who were not defendants in prior action). Moreover, none of the fairness concerns recognized by the Supreme Court in *Parklane Hosiery* are present here, as the *in rem* action did not involve small or nominal damages and the *in personam* action afforded Empresa no procedural opportunities previously unavailable to it. *See Parklane Hosiery,* 439 U.S. at 330–31, 99 S.Ct. at 651–52. The district court therefore properly found Empresa collaterally estopped from contesting its liability for the unrecovered portion of the *in rem* judgment.

## IV. *Additional Considerations*

Empresa raises two additional grounds for reversal: (1) Central Hudson breached the letter of undertaking it obtained with the insurer of the Vessel by attaching the SANTA ROSA, and therefore the district court erred in denying Empresa's motion to vacate that attachment, and (2) the district court abused its discretion in its award of prejudgment interest. Both of these claims are without merit.

### A. *Letter of Undertaking*

On January 18, 1988, two days after its cable pipeline was severed, Central Hudson requested a letter of undertaking from the Britannia Steamship Insurance Association (Britannia), the protection and indemnity association in which the Vessel was entered. Britannia issued a $3 million letter of undertaking on January 21, 1988, in exchange for Central Hudson's promise to refrain from arresting or attaching the Vessel or "any other vessel of the same ownership or any other property belonging to the owners." Although the letter of undertaking by its express terms only formed a contract between Central Hudson and Britannia, Empresa asserts it was a beneficiary of this agreement, thus arguing that Central Hudson breached the agreement by attaching one of its vessels, the SANTA ROSA. The district court rejected this claim, concluding that Central Hudson had not intended to include Empresa as a beneficiary of that agreement.

■ Empresa's claim succeeds only if it was a third-party beneficiary to the letter of undertaking. The burden of establishing this status rests on Empresa, as the agreement makes no explicit reference to the company. Thus, Empresa must prove that both

parties intended the agreement to benefit Empresa. *See Owens v. Haas,* 601 F.2d 1242, 1250 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Chaplin v. Consolidated Edison Co.,* 579 F.Supp. 1470, 1473 (S.D.N.Y.1984). In other words, Empresa was a third-party beneficiary only if it establishes a right to performance under the agreement and if the surrounding circumstances indicate that Central Hudson intended to provide Empresa with the benefit of such performance. *Trans-Orient Marine Corp. v. Star Trading & Marine,* 925 F.2d 566, 573 (2d Cir.1991) (citing Restatement (Second) of Contracts § 302 (1981)); *see also BAII Banking Corp. v. UPG, Inc.,* 985 F.2d 685, 696–97 (2d Cir. 1993); *Septembertide Pub., B.V. v. Stein & Day,* 884 F.2d 675, 679 (2d Cir.1989). Finally, we note that any ambiguity in the terms of the letter of undertaking must be resolved against Empresa. *See Record Club of America v. United Artists Records,* 890 F.2d 1264, 1271 (2d Cir.1989) (ambiguity in contract term should be resolved against party for whose benefit the term was drafted).

■ These principles demonstrate that Empresa was not an intended third-party beneficiary of the letter of undertaking. First, Central Hudson was not aware of Empresa's relationship to the Vessel at the time it executed the agreement. Indeed, Empresa did not reveal its interest in the Vessel definitively until it filed a restricted appearance in the *in rem* action, almost two years after the parties entered into the agreement. Accordingly, Central Hudson entered into the letter of undertaking on the assumption that Seiriki, not Empresa, was the party involved, as demonstrated by the fact that Central Hudson included only Seiriki as a defendant in the *in rem* action. Thus, without knowledge of Empresa's status, Central Hudson could not have intended the letter of undertaking to benefit any party but Seiriki, the registered owner of the Vessel.

In any case, even if we assume that Central Hudson was aware of Empresa's existence as well as its status as a bareboat charterparty, Empresa had the ability to claim its status as owner both to defend the case and to put its assets before the Court. It did not do so, and the record reflects Empresa's efforts to maintain an ambiguity concerning its relationship to the Vessel. In short, we agree with the district court that the January 21 agreement "necessarily referred to a known owner, not one lurking in the background," and conclude that Central Hudson did not violate that agreement by attaching the SANTA ROSA.

■ Empresa also contends that the attachment of the SANTA ROSA should have been vacated because it was undertaken solely with the improper motive of obtaining security for the *in rem* action. A claimant's motive in filing an attachment is irrelevant, however, *see Nehring v. Steamship M/V POINT VAIL,* 901 F.2d 1044, 1052 (11th Cir.1990); *Staronset Shipping Ltd. v. North Star Navigation,* 659 F.Supp. 189, 190 (S.D.N.Y.1987), and Empresa does not assert that the attachment of the SANTA ROSA violated the procedural requirements of Rule B of the Supplemental Rules. *Cf. Integrated Container Serv. v. Starlines Container Shipping,* 476 F.Supp. 119, 122 (S.D.N.Y.1979) ("A marine attachment is precluded under Admiralty Rule B(1) only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise in personam jurisdiction over the defendants ... and in addition [the defendants] can be found within the geographical confines of the district for service of process.") (citing *Seawind Compania, S.A. v. Crescent Line,* 320 F.2d 580, 582 (2d Cir. 1963)). Accordingly, we reject this argument as well.

### B. *Prejudgment Interest*

Finally, Empresa challenges the district court's award of prejudgment interest. In the *in rem* action the district court awarded damages of $3,371,937.60 and prejudgment interest of $1,105,646.55, and entered judgment in the total amount of $4,477,584.15 plus costs. Subsequently, based on its finding in the *in personam* action that Empresa was personally liable for the full amount of the *in rem* judgment, the court subtracted from the amount of the *in rem* award

($4,486,134.44) the $3 million Central Hudson had recovered through the letter of undertaking, leaving an amount of $1,486,134.44. The court then awarded prejudgment interest of 9 percent on this amount, or $364,761.39, and entered judgment in the *in personam* action for $1,850,895.83.

Empresa argues that the district court should have calculated prejudgment interest only on the amount of damages awarded in the *in rem* action that remained unpaid, or $371,937.60, rather than on the unpaid amount of the total *in rem* judgment (*i.e.*, damages plus prejudgment interest). Empresa contends that in reaching the latter determination the district court awarded interest on interest, resulting in an impermissible windfall to Central Hudson.

■ We review the district court's award for an abuse of discretion, as it is well established in this Circuit that the allowance of prejudgment interest in admiralty is a matter committed to the district court's discretion. *See Mentor Ins. Co. v. Brannkasse*, 996 F.2d 506, 520 (2d Cir.1993); *Magee v. U.S. Lines*, 976 F.2d 821, 823 (2d Cir.1992); *Mitsui & Co. v. American Export Lines*, 636 F.2d 807, 823 (2d Cir.1981); *see generally Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 833–36 (2d Cir.) (discussing general principles underlying award of prejudgment interest), *cert. denied,* —— U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992). Where no exceptional circumstances exist which militate against an award of prejudgment interest on a maritime claim, a plaintiff is entitled to have interest included in its recovery. *See Magee*, 976 F.2d at 823.

■ The district court correctly considered the damages and prejudgment interest components of the *in rem* action to have been merged by the judgment. *See San Juan Hotel Corp. v. Greenberg*, 502 F.Supp. 34, 35 (E.D.N.Y.), *aff'd mem.*, 646 F.2d 562 (2d Cir.1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1762, 68 L.Ed.2d 241 (1981); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3712, at 182. In analogous cases, we have affirmed lower court decisions in which a prior judgment, consisting of both principal

and accumulated interest, remained unpaid and a district court renewed the judgment and awarded interest on the entire amount due. *See, e.g., Hellenic Lines Ltd. v. Gulf Oil Corp.*, 359 F.2d 403 (2d Cir.1966) (per curiam) (holding no interest-on-interest problem existed where district court awarded interest on prior judgment amount, which in turn included prejudgment interest); *see also United States v. Hannon*, 728 F.2d 142 (2d Cir.1984); *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91 (2d Cir.1972). The district court therefore did not abuse its discretion in awarding prejudgment interest on the total amount remaining unpaid from the *in rem* judgment.

■ Empresa contends, in the alternative, that any interest awarded in this action actually constituted postjudgment interest awarded on the amount of the *in rem* judgment, and asserts that such an award should have been calculated at the United States Treasury Bill rate at the time of the decision (approximately 3.24 percent) rather than at 9 percent. *See* 28 U.S.C. § 1961(a). While Empresa's argument would have force if Central Hudson merely were executing on the *in rem* judgment, this action required Central Hudson to establish Empresa's *in personam* liability. The *in personam* judgment therefore constituted an entirely separate judgment. Accordingly, we find that the district court did not abuse its discretion in awarding prejudgment interest at the rate of 9 percent. *See Mentor*, 996 F.2d at 520 (holding rate at which prejudgment interest on judgment is calculated lies within discretion of district court); *Independent Bulk Transp. v. Vessel "MORANIA ABACO"*, 676 F.2d 23, 26 (2d Cir.1982) (same).

## CONCLUSION

For the reasons stated above, we affirm the judgment of the district court in all respects.

JACOBS, Circuit Judge, dissenting:

I respectfully dissent. The prior negligence action in admiralty, brought *in rem* against a substituted bond, resulted in a judgment exceeding the bond. The question

presented to us now is: what use if any can the plaintiff make of that partially-unsatisfied judgment? The majority concludes that the excess judgment can be collected *in personam* in this subsequent action against the bareboat charterer, that the plaintiff may invoke collateral estoppel to establish liability and damages, and that this collateral estoppel can be predicated in part upon a stipulation that manifests no intent that it shall be binding for any other purpose. I arrive at polar opposite conclusions: that the circumstances relied upon by the majority to justify collateral estoppel in fact support the conclusion that the *in rem* judgment is *res judicata* precluding any further lawsuit against the bond, the ship for which the bond was substituted, or the privies of the ship, including Empresa; and that a stipulation that does not expressly provide for collateral use has none.

### A. *Res Judicata.*

1. *Second Circuit Precedent.* In *Burns Bros. v. The Central R.R. of N.J.,* 202 F.2d 910 (2d Cir.1953) (Hand, J.), a barge owner sued the owner of a "carfloat" *in personam* for collision damages. After losing this *in personam* action, the barge owner then brought suit against the "carfloat" *in rem.* This Court held that the claims asserted *in rem* and *in personam* were the same cause of action and that, under the doctrine of *res judicata,* the final judgment in the first suit precluded the bringing of the second:

> This court has ... twice decided that a decree *in rem* is a bar to a suit *in personam,* and we cannot see why the rule should not work both ways. Moreover, we should have so held, had there been no precedents.

*Id.* at 913 (footnote omitted) (citing *Bailey v. Sundberg,* 49 F. 583 (2d Cir.), *cert. denied,* 145 U.S. 628, 12 S.Ct. 239, 36 L.Ed. 855 (1892); *Sullivan v. Nitrate Producers' S.S. Co.,* 262 F. 371 (2d Cir.1919)).

Appellees argue that *Burns* (as well as *Bailey* and *Sullivan* ) are distinguishable because in each case the plaintiff brought the second action to re-litigate issues decided against it in the first. *Res judicata,* which encourages judicial efficiency, of course bars such claims; but it also bars a plaintiff from using successive actions to seek damages arising out of a single incident from parties in privity with one another. The point is illustrated, with facts analogous to this appeal, in *The B & B No. 10 N.Y. Scow Corp. v. Olsen,* 121 F.2d 704 (2d Cir.1941). In that case, a tugboat collided with three barges. The owner of the three barges prevailed in an action *in rem* against the tugboat for damages sustained by two of the three barges, and then brought a second suit, *in personam* against the tugboat owner, for damages to the third barge. On appeal, "[t]he sole question" presented was "the effect of the previous judgment, which libelant relies on as conclusively showing fault against the respondents, but not as barring further recovery." *Id.* at 704. The Court held that, under the doctrine of *res judicata,* the judgment in the *in rem* action barred the subsequent action *in personam. Id.* at 705.

The Restatement of Judgments 2d confirms that the same result should be reached in this appeal:

> [W]here the two kinds of jurisdiction are available to a plaintiff but he fails to take advantage of them both, to allow him to bring successive nonpersonal and personal actions runs counter to the policy of *res judicata.* The justification has been often advanced that the two actions are pursuing different claims because one is against a person and the other against a thing. But both are affecting the interests of the same persons.

Restatement (Second) of Judgments § 30 cmt. b (1982).

2. *Empresa's Role.* In general, the doctrine of *res judicata* operates to preclude later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies (4) involving the same cause of action, *In re Teltronics Serv., Inc.,* 762 F.2d 185, 190 (2d Cir.1985) (citations omitted), where the remedy sought in the second action was available at the time of the first action. *See Burns Bros.,* 202 F.2d at 913. I agree with the majority that step three of this inquiry hinges on "whether a party 'control[led] or sub-

stantially participate[d] in the control of the presentation on behalf of a party' to the prior action." *Ante* at 367. I disagree with the majority's conclusion that this standard has not been met, and that Empresa is not in privity with the vessel it chartered because Empresa had a purely "representative capacity" in the first litigation. *Ante* at 368. In support of this proposition, the majority cites one case, *Hurt v. Pullman Inc.*, 764 F.2d 1443, 1448 (11th Cir.1985), and the Restatement (Second) of Judgments § 39 cmt. e (1982). But *Hurt* stands for no more than that "for a party to be bound by or take advantage of a prior suit that party *or its privity* must not only have been present in both suits, but it has to appear in the same capacity in both suits." *Id.* (emphasis added). Such a rule is necessary, *Hurt* notes, because a "party's representational responsibilities might", as in the case of a fiduciary relationship, "have precluded him as a matter of substantive law from asserting such individual interests in the first action." *Id.* This logic does not apply to the present case. Empresa's interests in both the first and second suit *were* identical: it wished to prevent Central Hudson from recovering for damages to the pipeline.

The illustration offered by the Restatement section cited by the majority is similarly inapplicable. Comment e to § 39 of the Restatement notes that "a trustee who takes control of litigation involving another in order to protect the trust is not on that account bound in a subsequent action in which he appears in his individual capacity." The analogy does not work: a trustee represents a trust by virtue of a fiduciary duty to do so; a bareboat charterer represents the vessel by virtue of a direct financial stake amounting to privity.

The majority is inconsistent in its view of Empresa's role. In considering Central Hudson's collateral estoppel claim, one of the elements of which is whether Empresa had a "full and fair opportunity" to litigate all the issues decided in the *in rem* trial, the majority observes: "Given its control of and partic-

ipation in the litigation Empresa cannot seriously contend that it had no 'full and fair opportunity' to litigate all issues decided in the *in rem* trial." *Ante* at 368–369. How is it that Empresa controlled and participated in the litigation for purposes of collateral estoppel but not for purposes of *res judicata?*

In resisting *res judicata*, Central Hudson does not seriously challenge the presence of the four requirements outlined by *Teltronics.* Rather, Central Hudson claims that *res judicata* is not applicable in this case because the *in personam* action could not have been brought against Empresa at the time the *in rem* action was brought against the Lunamar II. *See Burns Bros.*, 202 F.2d at 913. According to Central Hudson, it could not determine that Empresa was the bareboat charterer of the Lunamar II until just before the *in rem* trial began, and Empresa prevented Central Hudson from finding that out by stonewalling discovery aimed at identifying the bareboat charterer of the Lunamar II. The Joint Appendix, however, contains ample evidence that Central Hudson knew that Empresa might be liable for the damage caused by the Lunamar II as early as 1988. For example, in an interrogatory answer dated August 26, 1988, Central Hudson stated its belief that either Seiriki or Empresa owned the Lunamar II at the time of the January 1988 accident. *See* JA 134–35. Much of the ship's correspondence and documentation, produced by counsel for the vessel, is on Empresa's stationery. *See* JA 141–57. Finally, as depicted in a photograph taken by a Central Hudson employee two days after the accident that gave rise to this suit, the ship's funnel is emblazoned with the Empresa standard.[1] JA at 414.

This factual dispute bears on the *res judicata* requirement that the new defendant was available for suit at the time and place of the initial proceeding. Ultimately, however, I don't think that this factual dispute is dispositive, because it is undisputed that conclusive evidence of the bareboat charter was presented to Central Hudson by Empresa when

---

1. Empresa's standard, which appears on the stationery and the funnel, consists of a flag with dark triangles along the hoist and fly, pointing

inward toward a light center. Letters in the middle of each triangle and the light center spell out Empresa Naviera Santa: "ENS".

Empresa filed its claim of ownership a month prior to trial. JA at 77 ("Come now ... EMPRESA NAVIERA SANTA S.A., a business entity which was at the time of the filing of the complaint herein and still is owner *Pro Hac Vice* of the defendant LUNAMAR II ..."). Central Hudson could have moved to join Empresa even at that late date. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331 (1979) ("The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where ... the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."). Empresa was "available" at the time of the first suit for purposes of *res judicata.* If—as Central Hudson claims (and the majority accepts) when arguing in favor of collateral estoppel—the issues in the successive suits were the same, joinder of Empresa a month before trial would have been feasible and would have caused no prejudice or delay.

B. *Collateral Estoppel.*

The majority concludes that the finding of liability against the *res* collaterally estops Empresa from re-litigating liability in this subsequent action. The liability finding against the *res,* however, appears to rest in part upon a stipulation entered into during the *in rem* trial. I believe that the stipulation cannot have collateral estoppel effect in the subsequent lawsuit. "As a general rule ... an issue is not 'actually litigated' for purposes of collateral estoppel unless the parties to the stipulation manifest an intent to be bound in a subsequent action." *Red Lake Band v. United States,* 607 F.2d 930, 934, 221 Ct.Cl. 325 (1979); *see also Otherson v. Department of Justice,* 711 F.2d 267, 274 (D.C.Cir.1983); *Sekaquaptewa v. Mac-Donald,* 575 F.2d 239, 247 (9th Cir.1978); *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 992 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978). The stipulation at issue manifests no such intent. The majority opinion acknowledges the general rule, *ante* at 369 n. 4, but employs a rule-swallowing exception: "Because a finding of negligence on the part of the Vessel's crew and officers was essential

to the district court's determination of liability, we find that the parties intended the stipulation to be binding." *Ante* at 369 n. 4. Were this the rule, a stipulation would be binding unless the parties manifest an intent to the contrary—an inversion of well-settled law. *See Red Lake Band,* 607 F.2d at 934 ("an intention to be ... bound [in future litigations] should not be readily inferred").